# ILLINOIS OFFICIAL REPORTS

*People v. Vannote*, 2012 IL App (4th) 100798

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CURTIS VANNOTE, Defendant-Appellant. |
| District & No. | Fourth District<br>Docket No. 4-10-0798 |
| Filed | June 4, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Defendant's conviction for aggravated criminal sexual abuse was upheld over his arguments that the trial court erred in admitting the victim's prior recorded interview and defendant's prior conviction for aggravated criminal sexual abuse and that the evidence was insufficient to prove his guilt beyond a reasonable doubt, since the victim's recorded statement was inconsistent with his trial testimony, the 31 to 35 seconds of the victim's videotaped interview that were not recorded due to an equipment malfunction did not render the recording untrustworthy as a whole, the trial court did not abuse its discretion in determining that evidence of the prior offense was admissible to show defendant's propensity to commit the charged offense, and the evidence presented was sufficient to establish defendant's guilt. |
| Decision Under Review | Appeal from the Circuit Court of McLean County, No. 09-CF-547; the Hon. Charles G. Reynard, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on Appeal Michael J. Pelletier, Karen Munoz, and Colleen Morgan, all of State Appellate Defender's Office, of Springfield, for appellant.

William A. Yoder, State's Attorney, of Bloomington (Patrick Delfino, Robert J. Biderman, and Luke McNeill, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Panel JUSTICE POPE delivered the judgment of the court, with opinion.
Justice Appleton concurred in the judgment and opinion.
Justice Cook dissented, with opinion.

## OPINION

¶ 1 In February 2010, a jury convicted defendant, Curtis Vannote, of aggravated criminal sexual abuse (720 ILCS 5/12-16(c)(1)(i) (West 2008)). In August 2010, the trial court sentenced defendant to seven years' imprisonment.

¶ 2 Defendant appeals, arguing (1) the trial court erred in admitting the victim's recorded interview, (2) the court erred in allowing evidence of defendant's prior conviction for aggravated criminal sexual abuse, and (3) the evidence was insufficient to prove defendant guilty beyond a reasonable doubt of aggravated criminal sexual abuse. We affirm.

¶ 3         I. BACKGROUND

¶ 4 In June 2009, the State charged defendant with aggravated criminal sexual abuse, alleging he touched then nine-year-old K.S.'s penis for the purpose of sexual arousal or gratification.

¶ 5 Prior to trial, the trial court allowed the State's motion to present evidence defendant had been previously convicted of aggravated criminal sexual abuse in March 1995 in McLean County case No. 94-CF-1037. Defendant's prior conviction involved his hand touching a nine-year-old boy's penis and buttocks under the child's clothing.

¶ 6 During trial, K.S., then 11 years old, testified he could not remember the events of the day defendant allegedly touched him. K.S. also testified he did not remember being interviewed about defendant touching him. K.S. also stated he did not know why he was in court. As a result, the State moved to admit a video of a June 2009 interview of K.S. by Detective Michael Burns at the McLean County Children's Advocacy Center (Advocacy Center). The trial court excused the jury and held a conference on the matter.

¶ 7 During the conference, Burns testified to the accuracy of the video but stated, due to an equipment malfunction, approximately 35 seconds toward the beginning of the interview was not recorded, *i.e.*, the video skipped ahead 35 seconds. (The counter reflects a 31-second gap and the parties and the court refer to a 31-second gap and at times to a 35-second gap.) Burns

testified the omitted portion of the video contained routine background information. The parties viewed the video. According to the video, K.S. told Burns that while defendant was sitting on the front steps of K.S.'s mother's house, defendant "grabbed my private" and held it for approximately 10 seconds. K.S. pointed to his groin area to show what he meant by "private." K.S. stated defendant's touching him did not feel good. K.S. also stated defendant said something to him while he was grabbing K.S.'s private but K.S. did not know what defendant said. K.S. also stated K.S.'s mother's adult friend and roommate, Sergio Gloria, heard K.S. telling his mother what had happened. Sergio then punched defendant "right in the eye," knocking him unconscious. According to K.S., defendant "fell to the ground" and was "laying there snoring and he had blood all over [him]."

¶ 8     Defendant objected to the video's admission because after the 31- to 35-second skip, the video resumed with K.S. stating, defendant "grabbed my private" and "I told my mom." The trial court reserved its ruling on the video's admissibility.

¶ 9     When testimony resumed, K.S. testified he recalled being taken to the Advocacy Center for an interview, but he did not recall what he said there. K.S. testified he did not recall the police coming to his mother's house about a fight. K.S. also did not recall being interviewed by Burns.

¶ 10    On cross-examination, the following colloquy took place between defendant's trial counsel and K.S.:

"Q. MR. LEWIS [(defendant's trial counsel)]: Ms. Patton [(the assistant State's Attorney)] had asked you about whether you remember going to the Children's Advocacy Center; correct?

A. Yes.

Q. And there's a statement. You talked to somebody there?

A. Yes.

Q. And talking to someone there, do you recall saying that you were tapping [defendant] on the shoulder?

A. Yes.

Q. And you'd been playing with [defendant]?

A. Yes.

Q. You were outside on the steps?

A. Yes.

Q. Now, was there a time where you mentioned to your brother something that you thought happened?

A. Yes.

Q. Do you recall that, on the day before, indicating to your brother that someone touching you was an accident?

A. Yes.

Q. [Defendant] raised his arm, and rubbed across your front?

A. Yes.

Q. Do you recall telling Detective Burns that, after that happened, you went to get a pop?

A. Yes.

Q. Where'd you go get that pop at?

A. Main Street.

Q. Is that one of those stores that's a block or two away?

A. No. It was like a pop machine out of–right next to the barbershop.

Q. Who gave you the money for that pop?

A. My mom.

Q. After you came back from that, do you recall saying anything to your mom?

A. No.

Q. And do you still not recall anything about [defendant] being hurt that day?

A. No."

¶ 11    Burns then testified he had experience in interviewing children in cases involving child sex abuse. According to Burns' testimony, it is protocol to use nonleading questions any time a child is interviewed. Burns again testified the video was accurate and explained the equipment malfunctioned which resulted in the 35-second skip. Thereafter, the trial court admitted the videotaped interview and its transcript into evidence. The video was then played for the jury.

¶ 12    K.S.'s twin brother, Ky. S., testified K.S. came into the house sad and crying. Ky. S. testified K.S. told him defendant "touched him in the balls." On redirect, Ky. S. testified the exact phrase K.S. used was, "He touched me in the private." Sergio, their mother's friend and roommate, was at the house at the time. Ky. S. testified after their mother told Sergio what happened, Sergio punched defendant. Ky. S. recalled being taken to the Advocacy Center the next day and being interviewed by Burns. Ky. S. testified he told Burns the same things he had just testified to. On cross-examination Ky. S. agreed with counsel's statement he told Burns he thought the touching was an accident. On redirect, however, Ky. S. clarified he meant K.S. accidentally touched him (Ky. S.) when K.S. was showing Ky. S. how defendant had touched him (K.S.).

¶ 13    On February 25, 2010, the jury convicted defendant of aggravated criminal sexual abuse.

¶ 14    On August 3, 2010, the trial court sentenced defendant as stated.

¶ 15    This appeal followed.

¶ 16                                    II. ANALYSIS

¶ 17    On appeal, defendant argues (1) the trial court erred in allowing K.S.'s recorded interview where (a) it did not constitute a prior inconsistent statement and (b) the recording was not accurate because it was incompletely recorded; (2) the court erred in allowing the State to present evidence of defendant's prior conviction for aggravated criminal sexual abuse where (a) the evidence did not meet the threshold requirement of proximity in time and (b) the prejudicial impact of the evidence outweighed its probative value; and (3) the

evidence was insufficient to prove defendant guilty beyond a reasonable doubt of aggravated criminal sexual abuse where the State failed to establish defendant touched the minor for the purpose of sexual gratification.

¶ 18 The State argues (1) the trial court did not err in allowing it to present the recorded interview pursuant to section 115-10.1 of the Code of Criminal Procedure of 1963 (Procedure Code) (725 ILCS 5/115-10.1 (West 2008)), (2) the court did not err in allowing the State to present evidence of defendant's prior conviction pursuant to section 115-7.3 of the Procedure Code (725 ILCS 5/115-7.3 (West 2008)), and (3) sufficient evidence was presented to prove defendant touched the minor for the purpose of sexual gratification.

¶ 19 A. Admissibility of K.S.'s Prior Statement

¶ 20 Defendant argues the trial court erred in admitting a recording of K.S.'s interview where (a) the evidence did not constitute a prior inconsistent statement and (b) the interview was inaccurate because it was incompletely recorded. We disagree.

¶ 21 We initially note the State did not seek to introduce the interview under section 115-10 of the Procedure Code (725 ILCS 5/115-10 (West 2008) (providing for the admission of a victim's hearsay statements in prosecutions for sexual acts committed against children)), apparently because it expected K.S. to take the stand and testify about the incident. In fact, in its opening statement, the State made no mention of the video to the jury. Instead, the State told the jury it would hear K.S. himself testify to the alleged conduct. It was not until K.S. took the stand and began testifying that it became apparent he was unable to recall the details the State attempted to elicit. At that point, the State sought to introduce the recorded interview under section 115-10.1. (The assistant State's Attorney told the court she had never planned on using the video, and in all the times she spoke with K.S. in preparing for trial, he never answered her questions the way he answered at trial. She also noted K.S.'s hands were shaking as he walked to the witness stand.)

¶ 22 Section 115-10.1 of the Procedure Code provides a witness's prior inconsistent statement is admissible as substantive evidence where:

"(a) the statement is inconsistent with his testimony at the hearing or trial, and

(b) the witness is subject to cross-examination concerning the statement, and

* * *

(C) the statement is proved to have been accurately recorded by a tape recorder, videotape recording, or any other similar electronic means of sound recording." 725 ILCS 5/115-10.1 (West 2008).

¶ 23 1. *K.S.'s Prior Statement was Inconsistent*

¶ 24 The determination of whether a prior statement is inconsistent within the meaning of section 115-10.1 of the Procedure Code, so as to be admissible as substantive evidence, is within the sound discretion of the trial court and thus is reviewed for abuse of discretion. *People v. Harvey*, 366 Ill. App. 3d 910, 922, 853 N.E.2d 25, 35 (2006); *People v. Flores*, 128 Ill. 2d 66, 87-88, 538 N.E.2d 481, 489 (1989). An abuse of discretion occurs only when the

-5-

trial court's ruling is arbitrary, fanciful, or unreasonable or when no reasonable person would take the same view. *People v. Robertson*, 312 Ill. App. 3d 467, 469, 727 N.E.2d 404, 406 (2000).

¶ 25    While subsection (a) of section 115-10.1 requires a witness's prior statement be inconsistent with his trial testimony, the prior statement " 'does not need to directly contradict testimony given at trial to be considered "inconsistent," as section 115-10.1 of the [Procedure] Code uses that term.' " *People v. Grayson*, 321 Ill. App. 3d 397, 409, 747 N.E.2d 460, 470 (2001) (quoting *People v. Edwards*, 309 Ill. App. 3d 447, 458, 722 N.E.2d 258, 266 (1999) (Steigmann, J., specially concurring)). The term "inconsistent" in section 115-10.1 is not limited to direct contradictions but also includes " ' " 'evasive answers, *** silence, or changes in position.' " ' " *Grayson*, 321 Ill. App. 3d at 409, 747 N.E.2d at 471 (quoting *Edwards*, 309 Ill. App. 3d at 458, 722 N.E.2d at 266, quoting *Flores*, 128 Ill. 2d at 87, 538 N.E.2d at 488, quoting *United States v. Williams*, 737 F.2d 594, 608 (7th Cir. 1984)). "[T]he definition of inconsistency does not require a direct contradiction, but only a tendency to contradict the witness' present testimony." *People v. Lee*, 243 Ill. App. 3d 745, 749, 612 N.E.2d 922, 924 (1993). Further, in *Flores*, the supreme court found the trial court did not abuse its discretion when it determined the witness's "professed memory loss" on the stand and his prior testimony was inconsistent. *Flores*, 128 Ill. 2d at 87-88, 538 N.E.2d at 488-89 ("where a witness now claims to be unable to recollect a matter, a former affirmation of it should be admitted as a contradiction" (internal quotation marks omitted)).

¶ 26    In this case, K.S. testified he could not remember what took place on the day of the alleged touching. K.S.'s previous statement, recorded the day after the incident, was thus inconsistent with his trial testimony and sufficient to constitute a prior inconsistent statement. Moreover, despite K.S's inability to recall facts on direct examination, K.S. was personally available during defendant's trial and subject to cross-examination. During direct examination, K.S. recalled going to the Advocacy Center to be interviewed but did not recall those statements nor specific events concerning the day in question. However, because K.S. was available for cross-examination, and was cross-examined, defendant's constitutional right to confrontation was not implicated. See *People v. Garcia-Cordova*, 2011 IL App (2d) 070550-B, ¶ 66, 963 N.E.2d 355, 371 ("where the declarant appears for cross-examination at trial, the confrontation clause places no constraints at all on the use of his prior *testimonial* statements" (emphasis added) (citing *Crawford v. Washington*, 544 U.S. 36, 59 n.9 (2004))); *People v. Sutton*, 233 Ill. 2d 89, 122-23, 908 N.E.2d 50, 71 (2009) (finding witness who recalled making out-of-court statements but did not recall what they were was available for cross-examination); *People v. Martinez*, 348 Ill. App. 3d 521, 534-35, 810 N.E.2d 199, 212 (2004) (finding trial court did not err in admitting witness's written statement as admissible hearsay under section 115-10.1 where her in-court testimony was inconsistent with her prior statement due to memory loss and where defendant was given the opportunity to challenge her credibility through cross-examination). Thus, the trial court did not abuse its discretion in finding K.S.'s prior statement was inconsistent with his trial testimony.

¶ 27                          2. *The Recording Was Not Untrustworthy*

¶ 28        While K.S.'s prior statement was videotaped, defendant argues the interview was not accurately recorded for subsection (C) purposes because it was incompletely recorded where approximately 31 to 35 seconds of the interview were not recorded. However, a partially recorded statement is admissible unless the unrecorded portion is so substantial as to render the recording untrustworthy as a whole. *People v. Manning*, 182 Ill. 2d 193, 212, 695 N.E.2d 423, 431 (1998). "The admission of a recording that is partially inaudible, or that reproduces only part of a statement or conversation, is a matter within the trial court's discretion." *Manning*, 182 Ill. 2d at 212, 695 N.E.2d at 431.

¶ 29        In this case, just 31 to 35 seconds of the 12-minute interview were missing. Moreover, Burns testified the missing seconds were at the beginning of the interview, during which time Burns was asking background questions of K.S. While the recording resumed with K.S. stating defendant touched him, K.S. repeated that and similar statements later in the interview without being led by the interviewer's questions. Moreover, Ky. S.'s testimony corroborated K.S.'s statements. We are unable to say the unrecorded 31 to 35 seconds challenged by defendant are so substantial as to render the recording untrustworthy as a whole. Thus, the trial court did not err in admitting the recording of K.S.'s prior statement.

¶ 30        While the dissent argues "the State apparently recognized it could not satisfy the requirements of section 115-10, and fell back on section 115-10.1" (*infra* ¶ 57), no evidence in the record supports that position. Instead, the record reflects the State fully expected K.S. to testify to the incident and was not planning to introduce the video at all. Moreover, nothing in the record suggests the State would not have been successful admitting the video under section 115-10. We note under section 115-10.1, the witness's statement must have been recorded. See 725 ILCS 5/115-10.1(c)(2)(C) (West 2008). This is not a requirement for admissibility under section 115-10. See 725 ILCS 5/115-10 (West 2008).

¶ 31        Further, the dissent primarily relies on *People v. Learn*, 396 Ill. App. 3d 891, 919 N.E.2d 1042 (2009), and to a lesser extent, *People v. Kitch*, 239 Ill. 2d 452, 942 N.E.2d 1235 (2011). *Infra* ¶¶ 58-59. However, we believe the Second District has recently distanced itself from *Learn*. See *Garcia-Cordova*, 2011 IL App (2d) 070550-B, 963 N.E.2d 355; *People v. Sundling*, 2012 IL App (2d) 070455-B, 2012 WL 335664; *People v. Martin*, 408 Ill. App. 3d 891, 946 N.E.2d 990 (2011). Further, neither *Kitch* nor *Learn* involved section 115-10.1 and the admissibility of prior inconsistent statements as substantive evidence. Instead, those cases addressed the admissibility under section 115-10 of hearsay statements of a child victim in a sex-offense case. Moreover, *Kitch* did not involve memory loss and did not address memory-loss cases. Thus, "*Kitch* did not expressly or otherwise overrule [those] cases." *Garcia-Cordova*, 2011 IL App (2d) 070550-B, ¶ 59 n.4, 963 N.E.2d at 369 n.4.

¶ 32        The dissent also argues the use of the statement in this case violates *Crawford* principles because K.S. was not available for cross-examination. *Infra* ¶¶ 57-60. However, *Crawford* stands for the principle the confrontation clause places no restrictions on the admission of prior testimonial statements if the declarant testifies at trial. *Crawford*, 541 U.S. at 53-54. Here, it is undisputed K.S. took the stand and testified. K.S. also underwent cross-examination, testifying in more detail than during direct examination. As a result, we

-7-

disagree a reasonable argument exists K.S. was unavailable for cross-examination. See, *e.g.*, *Garcia-Cordova,* 2011 IL App (2d) 070550-B, ¶ 58, 963 N.E.2d at 368 (" 'a gap in the witness' recollection concerning the content of a prior statement does not necessarily preclude an opportunity for effective cross-examination' "(quoting *Flores*, 128 Ill. 2d at 88, 538 N.E.2d at 489)); *People v. Tracewski*, 399 Ill. App. 3d 1160, 1166, 927 N.E.2d 1271, 1275 (2010) (the confrontation clause is not violated by the admission of the witness's out-of-court statements, as long as the witness is subject to full cross-examination); *Sutton*, 233 Ill. 2d at 122-23, 908 N.E.2d at 70 (supreme court reaffirming its earlier decision in *Flores* that a witness who recalls making out of court statements but could not recall what those statements were was available for cross-examination).

¶ 33        Finally, we note the dissent contends K.S.'s cross-examination testimony was insufficient because it consisted largely of "yes" and "no" answers. *Infra* ¶ 61. However, as cross-examination is designed to elicit such answers, we disagree with the dissent in this regard. See *Tracewski*, 399 Ill. App. 3d at 1167, 927 N.E.2d at 1275 (no confrontation-clause problem simply because the witness's memory precluded him from being cross-examined to the extent the examiner would have liked).

¶ 34        For the foregoing reasons, K.S.'s prior statement was admissible under section 115-10.1 of the Procedure Code. As a result, the trial court did not abuse its discretion in admitting K.S.'s prior statement.

¶ 35                          B. Admissibility of Other-Crimes Evidence

¶ 36        Defendant next argues the trial court erred by improperly admitting other-crimes evidence against him. Specifically, defendant contends the court erred in allowing the State to present evidence of defendant's prior conviction for aggravated criminal sexual abuse where (a) the evidence did not meet the threshold requirement of proximity in time and (b) the prejudicial impact of the evidence outweighed its probative value. We disagree.

¶ 37        Generally, evidence of other crimes is inadmissible to demonstrate a defendant's propensity to engage in criminal activity. *People v. Donoho*, 204 Ill. 2d 159, 170, 788 N.E.2d 707, 714 (2003). However, evidence regarding other crimes is generally admissible to prove motive, intent, identity, absence of mistake, *modus operandi*, or any other relevant fact other than propensity. *Donoho*, 204 Ill. 2d at 170, 788 N.E.2d at 714. Section 115-7.3 of the Procedure Code, however, provides an exception to the general rule when a defendant is charged with, *inter alia*, aggravated criminal sexual abuse. See 725 ILCS 5/115-7.3(a)(1) (West 2008). Pursuant to section 115-7.3, evidence of another aggravated criminal sexual abuse "may be admissible (if that evidence is otherwise admissible under the rules of evidence) and may be considered for its bearing on any matter to which it is relevant" (725 ILCS 5/115-7.3(b) (West 2008)), including a "defendant's propensity to commit sex offenses" (*Donoho*, 204 Ill. 2d at 175, 788 N.E.2d at 717).

¶ 38        Where other-crimes evidence meets the initial statutory requirements, the evidence is admissible if it is relevant and its probative value is not substantially outweighed by its prejudicial effect. *Donoho*, 204 Ill. 2d at 176, 788 N.E.2d at 718. In making such a determination, the trial court may consider (1) the proximity in time to the charged offense,

(2) the degree of factual similarity to the charged offense, and (3) other relevant facts and circumstances. 725 ILCS 5/115-7.3(c) (West 2008).

¶ 39    "The admissibility of other-crimes evidence lies in the trial court's sound discretion, and we will not disturb that court's decision absent a clear abuse of discretion." *People v. Johnson*, 368 Ill. App. 3d 1146, 1155, 859 N.E.2d 290, 298 (2006). " 'An abuse of discretion will be found only where the trial court's ruling is arbitrary, fanciful, unreasonable, or where no reasonable person would take the view adopted by the trial court.' " *People v. Sutherland*, 223 Ill. 2d 187, 272-73, 860 N.E.2d 178, 233 (2006) (quoting *People v. Hall*, 195 Ill. 2d 1, 20, 743 N.E.2d 126, 138 (2000)).

¶ 40    While defendant argues his prior conviction was too remote in time from the instant proceeding, the " 'admissibility of other-crimes evidence should not, and indeed cannot, be controlled solely by the number of years that have elapsed between the prior offense and the crime charged.' " *Donoho*, 204 Ill. 2d at 183, 788 N.E.2d at 722 (quoting *People v. Illgen*, 145 Ill. 2d 353, 370, 583 N.E.2d 515, 522 (1991)). Instead, trial courts should review the proximity-in-time component on a case-by-case basis. *Illgen*, 145 Ill. 2d at 370, 583 N.E.2d at 522; *Donoho*, 204 Ill. 2d at 184, 788 N.E.2d at 722 (holding while the lapse of 12 to 15 years may lessen the probative value of other-crimes evidence, it is insufficient by itself to find an abuse of a discretion existed in its admission).

¶ 41    Further, to be admissible, other-crimes evidence must have " 'some threshold similarity to the crime charged.' [Citation.]" *Donoho*, 204 Ill. 2d at 184, 788 N.E.2d at 722. As the factual similarities increase, so too does the relevance, or probative value, of the other-crimes evidence. *People v. Bartall*, 98 Ill. 2d 294, 310, 456 N.E.2d 59, 67 (1983). However, where the evidence is not being offered to show a defendant's *modus operandi*, general similarity will be sufficient. *Illgen*, 145 Ill. 2d at 373, 583 N.E.2d at 523. Here, defendant's prior conviction serves to show defendant intentionally touched K.S.

¶ 42    In this case, sufficient similarities exist between the prior offense and the charged offense. Defendant was previously convicted of the same crime charged in the instant case. The victims in both cases were nine-year-old boys. Both crimes involved defendant touching a boy's penis. Defendant argues the crimes are too dissimilar because the prior conviction involved touching under the child's clothes inside a room and the charged crime alleged touching on the outside of the child's clothing on the front steps. However, the strong similarities between the two crimes outweigh their slight differences. The record shows the trial court properly weighed the probative value of the other-crimes evidence against its prejudicial effect and determined that evidence was admissible to demonstrate defendant's propensity to commit the charged offense. See 725 ILCS 5/115-7.3 (West 2008). The court did not abuse its discretion in making that determination.

¶ 43                              C. Sufficiency of the Evidence

¶ 44    Defendant argues the evidence was insufficient to prove him guilty beyond a reasonable doubt of aggravated criminal sexual abuse where it failed to establish defendant touched the minor for the purpose of sexual gratification. We disagree.

¶ 45    To find defendant guilty of aggravated criminal sexual abuse, the State had to prove (1)

defendant committed an act of sexual conduct with K.S., (2) K.S. was under 13 years of age, and (3) defendant was 17 years of age or over. 720 ILCS 5/12-16(c)(1)(i) (West 2008).

¶ 46    We note neither party disputes at the time of the alleged offense K.S. was 9 years old and defendant was 41 years old. Thus, defendant only disputes the State sufficiently proved he committed an act of sexual conduct upon K.S. "Sexual conduct" is defined as "any intentional or knowing touching or fondling by the victim or the accused, either directly or through clothing, of the sex organs, anus[,] or breast of the victim or the accused, *** for the purpose of sexual gratification or arousal of the victim or the accused." 720 ILCS 5/12-12(e) (West 2008). Specifically, defendant contends the State failed to sufficiently prove he touched K.S. for the purpose of sexual gratification.

¶ 47    We review the sufficiency of the evidence in sex-offense cases just as in any other criminal case, *i.e.*, the relevant inquiry is whether, when viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Brown*, 169 Ill. 2d 132, 152, 661 N.E.2d 287, 296 (1996). It is the responsibility of the trier of fact to determine the credibility of witnesses and the weight their testimony carries, to resolve conflicts in the evidence, and to draw reasonable inferences from that evidence. *People v. Ortiz*, 196 Ill. 2d 236, 259, 752 N.E.2d 410, 425 (2001). A court of review will not overturn the verdict of the fact finder "unless the evidence is so unreasonable, improbable, or unsatisfactory as to justify a reasonable doubt of defendant's guilt." *People v. Milligan*, 327 Ill. App. 3d 264, 267, 764 N.E.2d 555, 558 (2002).

¶ 48    Defendant argues the State failed to establish defendant touched K.S. for the purpose of sexual gratification. Defendant's trial counsel asked K.S. on cross-examination whether K.S., on the day before, indicated to his brother, "someone touching [him] was an accident." Counsel later argued the touching was accidental. However, in the recorded interview, K.S. stated defendant grabbed his penis for 10 seconds and said something to K.S. while doing so. K.S. also stated defendant "grabbed his private" with his hand and that it did not feel good. The testimony of a single witness, if credible, is sufficient to convict. *People v. Delgado*, 376 Ill. App. 3d 307, 311, 876 N.E.2d 189, 194 (2007) (sex-offense case) (citing *People v. Smith*, 185 Ill. 2d 532, 541, 708 N.E.2d 365, 369 (1999)).

¶ 49    K.S.'s statements were corroborated by K.S.'s brother, Ky. S., who testified K.S. came in the house after the incident and told Ky. S. defendant touched him on his privates. We note defendant's trial counsel attempted to raise the idea that any touching of K.S. by defendant was accidental because Ky. S. agreed on cross-examination he told Burns the touching was an accident. However, on redirect, Ky. S. clarified he meant K.S. (not defendant) accidentally touched him (Ky. S.) when K.S. was showing Ky. S. how defendant had touched him out on the porch. It is for the trier of fact to determine the credibility of the witnesses, to weigh the evidence and draw reasonable inferences therefrom, and to resolve any conflicts in the evidence. *People v. Slim*, 127 Ill. 2d 302, 307, 537 N.E.2d 317, 319 (1989). We will not substitute our judgment for that of the trier of fact in the area of witness credibility. *People v. Brooks*, 187 Ill. 2d 91, 132, 718 N.E.2d 88, 111 (1999).

¶ 50    Further, for the reasons previously stated, the trial court properly admitted defendant's

prior conviction for aggravated criminal sexual abuse. The facts underlying that conviction involved defendant touching a nine-year-old boy's penis. Defendant's properly admitted prior conviction serves to rebut any argument defendant touched K.S. with innocent intent. Viewing the evidence in the light most favorable to the State, as we must, the evidence in this case was not so unreasonable, improbable, or unsatisfactory that it created a reasonable doubt of defendant's guilt. See *People v. Wheeler*, 226 Ill. 2d 92, 115, 871 N.E.2d 728, 740 (2007) ("a conviction will be reversed where the evidence is so unreasonable, improbable, or unsatisfactory that it justifies a reasonable doubt of defendant's guilt"). The evidence presented was sufficient to find defendant guilty of aggravated criminal sexual abuse.

¶ 51                                    III. CONCLUSION

¶ 52     For the reasons stated, we affirm the trial court's judgment. As part of our judgment, we grant the State its $50 statutory assessment against defendant as costs of this appeal.

¶ 53     Affirmed.

¶ 54     JUSTICE COOK, dissenting:

¶ 55     The following evidence was presented in this case. Sabrina S. is the mother of twin boys, K.S. and Ky. S., age nine. The boys live with their father but visit Sabrina every Tuesday and Saturday. Sabrina lives in a big house that has been broken up into smaller apartments with many residents. Defendant is a friend of Sabrina's. Defendant sometimes comes to Sabrina's when the boys are there. Defendant has taken the boys to the library to get books and to O'Neal Park to play. Defendant never engaged in inappropriate conduct with the boys prior to the alleged incident. On the day in question, K.S. had been playing with defendant. Defendant was sitting on the steps in front of K.S.'s mother's apartment building, a public area, when K.S. came up behind him and tapped him on the shoulder. K.S. later told Detective Burns that defendant then turned and "grabbed" K.S.'s "private." When asked what defendant did with his hand, K.S. replied "Nothing[,] he just grabbed it and then he let go." Detective Burns conferred with the assistant State's Attorney about additional questions, and asked "did he just let go just as soon as he grabbed it or?" K.S. replied, "Yeah he hold it for 10 seconds." K.S. then went to get a soda, then returned and told his mother what had happened. The mother's live-in boyfriend, Sergio Gloria, overheard the conversation and went outside, punching defendant in the eye and rendering him unconscious, as a result of which the police were called.

¶ 56     At trial, K.S. testified he could not remember anything about the incident or the interview. On cross-examination, K.S. answered some questions, giving "yes" or "no" answers. In response to the question, "Do you recall that, on the day before, indicating to your brother that someone touching you was an accident?" K.S. responded "yes." The State did not question K.S. about that testimony. The State then called Detective Burns and played the video of Detective Burns' questioning of K.S. for the jury. The State did not question K.S. about the video, but then called Ky. S., who testified about an incident where K.S. accidentally touched him. The State did not call any witnesses other than the two boys and

-11-

Detective Burns. After beginning deliberations, the jury several times advised the court they were a "hung jury," and there was no possibility of producing a unanimous verdict. The court directed the jury to keep deliberating and at the end of the day directed the jury to return in the morning. At 11:47 a.m., the next day, the jury returned a verdict finding defendant guilty.

¶ 57     Section 115-10 is the hearsay exception which specifically applies to this situation, but the State apparently recognized it could not satisfy the requirements of section 115-10 and fell back on section 115-10.1. "The case law and the legal literature reflect that most often child victims, due to their tender years, are unavailable to testify at trial." *In re T.T.*, 384 Ill. App. 3d 147, 169, 892 N.E.2d 1163, 1181 (2007) (O'Mara Frossard, J., specially concurring) (opinion as modified July 25, 2008) (discussing section 115-10). The confrontation clause, however, applies to section 115-10.1 as well as to section 115-10. The principal evil to which the confrontation clause is directed is the use of *ex parte* examinations as evidence against the accused, where neither defendant nor his attorney is present for the interrogation and there is no opportunity to cross-examine. *Crawford*, 541 U.S. at 50. Whatever else "testimonial" covers, it applies at a minimum to police interrogations. *Crawford*, 541 U.S. at 68-69. A videotaped statement "knowingly given in response to structured police questioning, qualifies [as testimonial] under any conceivable definition." *Crawford*, 541 U.S. at 53 n.4. The interview room used here had an adjacent observation room so that an assistant State's Attorney could watch the interview on a monitor. During the interview, Detective Burns consulted with the assistant State's Attorney to determine what further questions the assistant State's Attorney wanted to ask.

¶ 58     The confrontation clause poses no restrictions on the admission of hearsay testimony if the declarant testifies at trial and is present "to defend or explain" that testimony. (Internal quotation marks omitted.) *People v. Kitch*, 239 Ill. 2d 452, 467, 942 N.E.2d 1235, 1244 (2011). In *Kitch*, the victims' direct testimony, standing alone, was sufficient to establish the elements of the relevant counts. "We also conclude, largely for this reason, that K.J.K.'s and M.J.B.'s direct testimony was sufficient to allow for effective cross-examination. Their direct testimony provided enough detail to allow for cross-examination within the meaning of the confrontation clause." *Kitch*, 239 Ill. 2d at 464, 942 N.E.2d at 1242. Where a victim testifies to preliminary matters but then becomes too emotionally distraught to continue, the victim has not "testified" for purposes of section 115-10. *People v. Learn*, 396 Ill. App. 3d 891, 898-99, 919 N.E.2d 1042, 1049 (2009). "[The victim's] spoken testimony was not incriminating; thus, defendant was not confronted by his accuser nor given the right to rigorously test the accusation against him through cross-examination." *Learn*, 396 Ill. App. 3d at 901-02, 919 N.E.2d at 1051. In contrast, in *Kitch,* the victims accused defendant of multiple acts of sexual abuse, through their direct testimony. *Kitch*, 239 Ill. 2d at 465, 942 N.E.2d at 1243.

¶ 59     The situation here is the same as in *Learn*. K.S., 11 years old at the time of trial, testified he could not remember anything. K.S.'s direct testimony did not provide enough detail to allow for cross-examination within the meaning of the confrontation clause. *Kitch*, 239 Ill. 2d at 464-65, 942 N.E.2d at 1242-43. "[A] gap in the witness' recollection concerning the content of a prior statement does not necessarily preclude an opportunity for effective cross-examination." *Flores*, 128 Ill. 2d at 88, 538 N.E.2d at 489. There was more than a gap here.

K.S. had no recollection of the alleged incident or the videotaped examination.

¶ 60    A distinction has been drawn between cases where a witness is too emotionally distraught to testify and cases where a witness is simply unable to remember. "It is sufficient that the defendant has the opportunity to bring out such matters as the witness' bias, his lack of care and attentiveness, his poor eyesight, and even (what is often a prime objective of cross-examination [citation]) the very fact that he has a bad memory." *United States v. Owens*, 484 U.S. 554, 559 (1988). When an adult witness says he cannot remember, that may discredit his testimony, but the same may not be true of a child witness. Child witnesses, due to normal developmental limitations, are susceptible to forgetting details when there is a substantial delay between the event and the request to recall it at trial. *T.T.*, 384 Ill. App. 3d at 163, 892 N.E.2d at 1176. The State's case was not discredited by the inability to remember in this case; the State sought to take advantage of it. And was this a case of inability to remember or a case of an emotionally distraught witness? In closing argument, the assistant State's Attorney described K.S.'s appearance in court. "His hands were shaking as he walked up there. He sat there. He was nervous *** as soon as you went into anything about June 24th, it was no. His head went down, he shut down."

¶ 61    The ability of a witness to testify regarding a particular matter requires a minimum capacity to observe, record, recollect and recount in response to questions. Michael H. Graham, Handbook of Illinois Evidence § 601.1 (10th ed. 2010). When a witness is only able to say "yes" or "no," the jury may conclude the answer is that of the interrogator. The State took the position that the answers given on cross-examination, including the affirmative answer to the question, "Do you recall *** indicating *** that someone touching you was an accident?" were worthless. The assistant State's Attorney stated that defense counsel asked a couple of questions, "Did you say this at this point? Did you say that at this point? And [K.S.] was very, yes, yes, no, no, nothing further, and he was very short with his answers." There was no opportunity for effective cross-examination in this case.

¶ 62    Even under the terms of section 115-10.1, the hearsay statement is inadmissible. The statement was not "proved to have been accurately recorded." 725 ILCS 5/115-10.1(c)(2)(C) (West 2008). Recording interviews is especially important with children, because children, especially younger children, are particularly susceptible to suggestion by adults. *People v. Miles*, 351 Ill. App. 3d 857, 866, 815 N.E.2d 37, 45 (2004). The digital video disc (DVD) player here had a known malfunction which had caused it to skip on several previous recordings. The most important part of the interview, the 31 seconds of questioning directly before K.S. stated defendant touched him, is missing from the recording. Were the questions leading? Were they open-ended, or did Detective Burns coach K.S. on what to say? The recording provides no answer. Admission of a prior inconsistent statement as substantive evidence under section 115-10.1 is essentially the same as impeaching a witness with his prior inconsistent statement. "[A] key aspect to establishing the foundation for the admissibility of a prior inconsistent statement is the need to confront the witness *while on the witness stand* with that statement." (Emphasis in original.) *Grayson*, 321 Ill. App. 3d at 406, 747 N.E.2d at 468. That was not done in this case.

¶ 63    Generally, evidence of other crimes is inadmissible to demonstrate a defendant's propensity to engage in criminal activity, but the legislature has created a special rule for

-13-

sexual-abuse cases, section 115-7.3. Before other-crimes evidence may be used, however, the statute requires the court to apply a balancing test, weighing the probative value of the evidence against the undue prejudice it may produce against the defendant. 725 ILCS 5/115-7.3(c) (West 2008); *People v. Ward*, 2011 IL 108690, ¶ 26, 952 N.E.2d 601, 606. In this case, the prior offense was the first thing the assistant State's Attorney mentioned in her opening statement, and it was the first item of evidence she introduced. Admission of the prior offense did not simply show defendant's propensity in this case; it was the bulk of the evidence against him. Given the difficulty the jury had with this case, there can be no doubt that the probative value of the prior conviction was outweighed by its prejudicial effect.

¶ 64       We should reverse the defendant's conviction.