# Illinois Official Reports

## Appellate Court

---

**People v. Smith, 2015 IL App (4th) 130205**

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JOHN E. SMITH, Defendant-Appellant. |
| District & No. | Fourth District<br>Docket No. 4-13-0205 |
| Filed | March 26, 2015 |
| Decision Under Review | Appeal from the Circuit Court of McLean County, No. 12-CF-229; the Hon. Robert L. Freitag, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Michael J. Pelletier, Jacqueline L. Bullard, and Daaron V. Kimmel, all of State Appellate Defender's Office, of Springfield, for appellant.<br><br>Jason Chambers, State's Attorney, of Bloomington (Patrick Delfino, David J. Robinson, and Allison Paige Brooks, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |

Panel            PRESIDING JUSTICE POPE delivered the judgment of the court, with opinion.

Justices Harris and Steigmann concurred in the judgment and opinion.

## OPINION

¶ 1       In August 2012, a jury convicted defendant, John E. Smith, of one count of predatory criminal sexual assault of a child (720 ILCS 5/11-1.40(a)(1) (West 2010)), three counts of aggravated criminal sexual abuse (720 ILCS 5/11-1.60(c)(1)(i) (West 2010)), and one count of sexual exploitation of a child (720 ILCS 5/11-9.1(a)(2) (West 2010)) based on incidents of sexual abuse involving defendant and two unrelated children, which occurred in February or March 2012. Pursuant to section 115-7.3 of the Code of Criminal Procedure of 1963, the trial court allowed the admission of evidence about defendant's alleged sexual abuse of his then-stepdaughter and her cousin, which occurred from approximately 1994 through 2000. 725 ILCS 5/115-7.3 (West 2010). Defendant appeals, arguing his conviction should be vacated and the matter should be remanded for a new trial because the trial court abused its discretion by admitting unduly prejudicial evidence of his alleged prior sexual abuse. We affirm.

¶ 2                                   I. BACKGROUND

¶ 3       In March 2012, a grand jury indicted defendant on one count of predatory criminal sexual assault of a child, three counts of aggravated criminal sexual abuse, and one count of sexual exploitation of a child. Prior to trial, the court held a hearing on the State's motion to admit evidence of prior uncharged allegations of sexual abuse by defendant that occurred from 1994 or 1995 through 2000. The State sought to introduce this evidence through the testimony of the two prior victims for the purpose of showing propensity, intent, or absence of mistake. The court allowed the State's motion but ruled the victims of the prior sexual abuse were not to testify as to conduct that went beyond the factual similarities to the charged conduct. At trial, the State presented seven witnesses and defendant presented six witnesses, including testimony in his own defense. We summarize only the facts and testimony necessary for the purposes of this appeal.

¶ 4                  A. Allegations Leading to Current Charges

¶ 5       At the time of the incidents giving rise to this case, defendant was in a romantic relationship with Sarah Myers, a mother of five children. B.N. and S.N., the children of Myers' friend Georgenea N., occasionally spent the weekend at Myers' house. The Myers house has three levels: a basement, a main floor, and an upstairs floor. Myers' bedroom and the living room are on the main floor. The basement has a laundry area and a play area with baby dolls, a baby doll bed, and a play kitchen. All the alleged incidents occurred in the living room, basement, and Myers' bedroom on either the weekend of February 16 to February 19, 2012, or the weekend of March 1 to March 4, 2012.

¶ 6       B.N., a nine-year-old girl, testified she was sitting on the couch in the living room on the main level of the Myers home. Defendant came into the living room and picked up B.N.,

cradling her like a baby. Further, she testified defendant used his hand and rubbed her vagina over her clothing. Defendant rubbed her vagina three times, all in the same incident. Defendant did not immediately stop at B.N.'s request but eventually put her down.

¶ 7    B.N. further testified she saw defendant touch S.N. on one occasion. S.N. was sitting on the couch in the Myers' living room and B.N. was hiding in a hallway. B.N. stated she hid in the hallway because she suspected defendant would touch S.N., just as he had touched her. The State elicited no further testimony from B.N. regarding the incident with S.N.

¶ 8    S.N., a five-year-old girl, testified about two incidents involving defendant. One incident occurred in Myers' bedroom, where defendant was playing a video game. S.N. was watching the video game, and both S.N. and defendant sat on the bed. She testified defendant touched her vagina over her clothing.

¶ 9    The second incident involved defendant, S.N., and one of Myers' children, C.M., a five- or six-year-old girl. S.N. and C.M. were in the basement of the Myers home playing with baby dolls. Defendant came down to the basement and pulled down both S.N.'s and C.M.'s pants and underpants. S.N. testified defendant inserted one of his fingers into her vagina while she was lying on the baby doll bed. When S.N. said, "ouch," defendant said, "let's stop" and removed his finger from her vagina. Defendant said, "oh, that's nice" while looking at S.N.'s exposed lower body. S.N. further testified defendant's pants were down, his penis was exposed, and defendant told S.N. to look at his penis.

¶ 10    Approximately three or four days after the incidents with S.N. occurred, S.N. told her mother defendant had touched her vagina. Georgenea reported the allegations to the Bloomington police, and the next day B.N. and S.N. were interviewed by the associate director of operations at the Child Advocacy Center. Videos of those interviews were played at trial and largely corroborated the in-court testimony of the two girls.

¶ 11                    B. Prior Uncharged Allegations of Abuse

¶ 12    Before the State presented Jennifer and Jill G. as witnesses, the trial court read a limiting instruction to the jury, informing the jurors the evidence could only be considered for intent, absence of mistake, or propensity. Jill was defendant's stepdaughter from a previous relationship, which lasted from 1991 to 2003. Jill's mother, Julie G., would occasionally babysit Jennifer, her niece. Jennifer, 21 years old at the time of trial, testified about an incident that occurred when she was about four or five years old. She was at defendant and Julie's house and defendant brought her into Jill's bedroom. Defendant pulled down Jennifer's pants and underpants and inserted his finger into her vagina. Defendant had his finger in her vagina for approximately five minutes while Jennifer watched television. Jill entered the room and began yelling. Jennifer remembered going to the Department of Children and Family Services (DCFS), but she did not recall anything she said to the interviewers there.

¶ 13    Jill, 24 years old at the time of trial, testified defendant began coming into her bedroom at night after she had fallen asleep when she was approximately five years old. Defendant would awaken Jill by pulling her pants off and would insert his fingers into her vagina. Jill testified this occurred approximately once a week and continued until she was 12 years old. Defendant would also touch Jill's vagina over her clothes when they were in a car together. Jill further testified about an incident where defendant removed her bathing suit bottom. On that occasion, defendant also exposed his penis to Jill. Jill also stated she observed defendant touch Jennifer's

vagina on multiple occasions. In accordance with the trial court's ruling admitting this evidence, Jill did not testify about any incidents involving defendant's oral contact with her vagina. Jill also remembered talking to someone from DCFS or the police but could not recall anything she said.

¶ 14                                            C. Conclusion of Trial

¶ 15     Following the State's case in chief, defendant presented numerous witnesses and testified on his own behalf. Defendant testified he never sexually abused B.N., S.N., Jennifer, or Jill. Defendant stated on cross-examination he was not at Myers' home at all on the weekend of February 16 to February 19, 2012. Carla, Erica, and Sarah Myers testified they were all at the Myers home on the weekend of March 1 to March 4, 2012. Defendant was at Myers' home that weekend but spent most of his time outside working on Myers' car. He came in the house a couple times to use the bathroom or get a drink. Defendant also presented testimony about an argument between Myers and Georgenea on the weekend in question. According to defendant, the argument centered around Georgenea dropping her children off for the entire weekend on a regular basis without contributing anything to the Myers household. In rebuttal, Georgenea N. denied arguing with Myers.

¶ 16     The jury returned guilty verdicts on all five counts. Defendant filed a motion for a new trial, arguing, *inter alia*, the court erred in admitting unduly prejudicial evidence of defendant's prior sexual abuse of his then-stepdaughter and her cousin. The court denied defendant's motion for a new trial and sentenced defendant to 30 years' imprisonment for predatory criminal sexual assault (count I), 12 years' imprisonment for each of the 3 counts of aggravated criminal sexual abuse (counts II, IV, and V), and 6 years' imprisonment for sexual exploitation of a child (count III), with the sentences on counts II through V to run consecutively to the sentence on count I.

¶ 17     This appeal followed.

¶ 18                                            II. ANALYSIS

¶ 19     On direct appeal, defendant argues the trial court abused its discretion in admitting evidence of his other offenses pursuant to statute (725 ILCS 5/115-7.3 (West 2010)). Specifically, defendant argues the court improperly placed too much weight on the factual similarities between the charged conduct and the prior sexual abuse and did not place enough weight on the lapse of time or the fact the other-crimes evidence consisted of mere allegations, not convictions. Defendant argues the court abused its discretion in improperly balancing the statutory factors and in finding the probative value of the other offenses was not substantially outweighed by its prejudicial effect.

¶ 20     Evidence of other offenses is generally inadmissible to demonstrate a defendant has the propensity to commit the charged criminal conduct. *People v. Donoho*, 204 Ill. 2d 159, 170, 788 N.E.2d 707, 714 (2003). Such evidence, while relevant, is excluded because it "has 'too much' probative value." *Donoho*, 204 Ill. 2d at 170, 788 N.E.2d at 714 (quoting *People v. Manning*, 182 Ill. 2d 193, 213, 695 N.E.2d 423, 432 (1998)). This exclusion is designed to ensure a defendant's guilt or innocence is decided solely on the basis of the charged conduct, rather than running the risk of a "jury convicting a defendant because he or she is a bad person deserving punishment." *Donoho*, 204 Ill. 2d at 170, 788 N.E.2d at 714.

¶ 21    Evidence of other offenses may be admissible to demonstrate "motive, intent, identity, absence of mistake, *modus operandi*, or any other relevant fact other than propensity." *People v. Vannote*, 2012 IL App (4th) 100798, ¶ 37, 970 N.E.2d 72. However, evidence of other offenses to demonstrate propensity may be admissible under section 115-7.3 when a defendant is charged with one of the enumerated sex offenses. *People v. Ward*, 2011 IL 108690, ¶ 25, 952 N.E.2d 601. "Where other-crimes evidence meets the initial statutory requirements, the evidence is admissible if it is relevant and its probative value is not substantially outweighed by its prejudicial effect." *Vannote*, 2012 IL App (4th) 100798, ¶ 38, 970 N.E.2d 72. When weighing the probative value of the other-crimes evidence against its prejudicial effect, the statute allows courts to consider (1) the proximity in time to the charged offense, (2) the degree of factual similarity to the charged offense, and (3) other relevant facts and circumstances. 725 ILCS 5/115-7.3(c) (West 2010).

¶ 22    A trial court must "engag[e] in a meaningful assessment of the probative value versus the prejudicial impact of the evidence." *Donoho*, 204 Ill. 2d at 186, 788 N.E.2d at 724. A court's decision to admit other-crimes evidence will not be reversed absent an abuse of discretion. *Donoho*, 204 Ill. 2d at 182, 788 N.E.2d at 721. " 'An abuse of discretion will be found only where the trial court's ruling is arbitrary, fanciful, unreasonable, or where no reasonable person would take the view adopted by the trial court.' " *People v. Sutherland*, 223 Ill. 2d 187, 272-73, 860 N.E.2d 178, 233 (2006) (quoting *People v. Hall*, 195 Ill. 2d 1, 20, 743 N.E.2d 126, 138 (2000)).

¶ 23    The other offenses must have a threshold similarity to the charged conduct to be admissible. *People v. Butler*, 377 Ill. App. 3d 1050, 1066, 882 N.E.2d 636, 648 (2007). "[W]here the evidence is not being offered to show a defendant's *modus operandi*, general similarity will be sufficient." *Vannote*, 2012 IL App (4th) 100798, ¶ 41, 970 N.E.2d 72. The probative value of prior-bad-acts evidence increases as the factual similarities increase. *Vannote*, 2012 IL App (4th) 100798, ¶ 41, 970 N.E.2d 72.

¶ 24    Defendant argues the prior sexual abuse is dissimilar from the current charged conduct because the prior abuse was continual and ongoing, it was significantly more intense, and DCFS reports reflected defendant's abuse of young boys as well as of Jennifer and Jill. However, defendant introduced no evidence of these other, dissimilar acts at the *in limine* hearing and the trial court specifically based its decision only on the evidence presented, *i.e.*, the statements of Jill and Jennifer. No two crimes are identical, so the existence of some differences does not necessarily defeat admissibility. *Donoho*, 204 Ill. 2d at 185, 788 N.E.2d at 723. The *Donoho* court summarized the differences between the prior sexual abuse and the conduct at issue in that case as follows: "in 1983 defendant had no relationship to the children, and here he was their stepfather; in 1983 there was a single incident, and here there were several incidents over the course of three years; in 1983 the incident involved a boy and girl at the same time, and here the conduct occurred with each child separately; and in 1983 he told the children they were playing a game, and here he threatened to ground the children if they told anyone." *Donoho*, 204 Ill. 2d at 185, 788 N.E.2d at 723. These differences related to the defendant's *access* to the children. The court found "more compelling the similarity of the *nature* of the abuse itself because it was a product of the defendant's choice." (Emphasis added.) *Donoho*, 204 Ill. 2d at 186, 788 N.E.2d at 723.

¶ 25    As in *Donoho*, defendant was Jill's stepfather and had significantly greater access to Jill than he did to Jennifer, B.N., or S.N., so the fact the prior sexual abuse of Jill was continual and

ongoing is not a compelling difference from the isolated instances here. Defendant's oral contact with Jill's vagina is not a compelling difference because it shows defendant's fascination with the vaginas of young girls, discussed below. The record does not contain any evidence of defendant's prior abuse of young boys–nor was such evidence presented to the trial court–beyond a passing reference by defense counsel.

¶ 26 The trial court properly found the evidence of the prior sexual abuse was "remarkably similar" to the evidence of defendant's abuse of B.N. and S.N. The court admitted Jennifer's and Jill's testimony that defendant would remove their pants and underpants, view their vaginas, and insert his finger into their vaginas. Jill also testified defendant touched her clothed vagina when they were in a car together and on one occasion defendant exposed his penis. B.N. and S.N. both testified defendant touched their clothed vaginas. S.N. further testified defendant pulled her pants down, viewed her vagina, inserted his finger into her vagina, and exposed his penis.

¶ 27 The similarities show defendant's fascination with viewing and touching the clothed or unclothed vaginas of young girls. In all four instances, defendant only showed interest in touching and viewing the girls. Moreover, defendant was only interested in fondling or looking at the lower half of the girls' bodies. Defendant exposed his penis to Jill and S.N., but did not invite, or appear to show interest in, being touched by the girls. These idiosyncratic similarities speak to the nature of the abuse, "a product of the defendant's choice." *Donoho*, 204 Ill. 2d at 186, 788 N.E.2d at 723.

¶ 28 The prior-sexual-abuse evidence is obviously relevant and probative to show propensity. *Donoho*, 204 Ill. 2d at 170, 788 N.E.2d at 714. We agree with the trial court the prior sexual abuse is remarkably similar to the charged conduct at issue here. Given these similarities, we cannot say it was unreasonable, fanciful, or arbitrary for the court to place considerable weight on this factor in determining whether the probative value of the evidence was substantially outweighed by its prejudicial effect. Additionally, in limiting the prejudice to defendant, the court excluded evidence of defendant's oral contact with Jill's vagina as not sufficiently similar to his conduct in this case.

¶ 29 The other-offenses evidence the State sought to introduce involved Jennifer's allegations of abuse that occurred in 1994 or 1995. However, defendant's sexual abuse of Jill continued until the year 2000. Thus, we must determine whether a period of 12 to 18 years between the prior offenses and the charged conduct is so unduly prejudicial that it substantially outweighs the probative value of the other-crimes evidence. *Vannote*, 2012 IL App (4th) 100798, ¶ 38, 970 N.E.2d 72. The number of years separating the other offense and the charged act do not, standing alone, control whether the prior bad act evidence ought to be admitted. *Donoho*, 204 Ill. 2d at 184, 788 N.E.2d at 722. The supreme court has "decline[d] to adopt a bright-line rule about when prior convictions are *per se* too old to be admitted under section 115-7.3." *Donoho*, 204 Ill. 2d at 183-84, 788 N.E.2d at 722. The issue of proximity must be evaluated on a case-by-case basis when determining the probative value of prior-bad-act evidence. *Donoho*, 204 Ill. 2d at 183, 788 N.E.2d at 722. "The appellate court has affirmed admission of other-crimes evidence over 20 years old under the exceptions because the court found it to be sufficiently credible and probative." *Donoho*, 204 Ill. 2d at 184, 788 N.E.2d at 722 (citing *People v. Davis*, 260 Ill. App. 3d 176, 192, 631 N.E.2d 392, 404 (1994)).

¶ 30 Defendant relies on a case in which the Third District found a 25- to 42-year lapse, standing alone, rendered the prior-bad-act evidence prejudicial, and that prejudice was further

compounded by factual differences, "especially since the prior offenses involve[d] uncharged and unproven allegations of sexual abuse that [were] even more heinous than the charged offense." *People v. Smith*, 406 Ill. App. 3d 747, 754, 941 N.E.2d 419, 425-26 (2010). The *Smith* court affirmed the trial court's exercise of discretion to keep the stale evidence out. While the passage of many years may lessen the probative value of other-offense evidence, "standing alone it is insufficient to compel a finding that the trial court abused its discretion by admitting evidence about it." *Donoho*, 204 Ill. 2d at 184, 788 N.E.2d at 722. Just as there is no bright-line rule for the age of prior convictions under section 115-7.3, there is no bright-line rule for the age of uncharged prior offenses. *Donoho*, 204 Ill. 2d at 183-84, 788 N.E.2d at 722.

¶ 31    Defendant contends a distinction should be drawn in instances where the other-crimes evidence consists of mere uncharged allegations as opposed to criminal convictions. This is so because criminal convictions are the result of an adversarial trial where the State was required to meet its burden of proving the defendant guilty beyond a reasonable doubt. Uncharged allegations, on the other hand, do not have the benefit of the certainty of guilt that comes with a conviction and present issues regarding the reliability and availability of evidence after many years have passed. In support of this contention, defendant argues–beyond the prejudicial effect of the passage of time–the intervening years rendered him incapable of defending against those allegations or effectively impeaching Jennifer and Jill with prior inconsistent statements documented in DCFS reports. Those DCFS reports are not in the record and apparently were not presented to the trial court or the jury.

¶ 32    While we agree uncharged allegations may present problems, particularly when large gaps of time intervene, we cannot say the trial court abused its discretion in this case. The court took numerous steps to limit the prejudice to defendant. It barred testimony regarding allegations of defendant's oral contact with Jill. A limiting instruction was read to the jury both at the time the witnesses testified and after closing argument. On cross-examination, defendant was able to establish no charges were ever filed with respect to the prior sexual abuse. Further, the State did not overemphasize the allegations of prior sexual abuse in its opening argument and read the limiting instruction during closing argument.

¶ 33    It is clear the trial court engaged in a meaningful assessment of the probative value versus the prejudicial impact of Jennifer's and Jill's testimony regarding defendant's prior sexual abuse. The court heard defendant's argument regarding the prejudicial effect of the other-crimes evidence and the difficulty in locating someone who worked for DCFS so many years ago. The court considered proximity and recognized the lapse in time was substantial. However, the court noted the lapse in time was not dispositive on the issue of admissibility. The court discussed relevant case law and the substantial similarities between the prior sexual abuse and the charged criminal conduct. The court found the probative value of the prior sexual abuse was not outweighed by its prejudicial effect and admitted the evidence, subject to an exception to limit prejudice to defendant by barring evidence of defendant's oral contact with Jill.

¶ 34    The trial court's balancing of the statutory factors was not unreasonable, arbitrary, or fanciful. *Sutherland*, 223 Ill. 2d at 272-73, 860 N.E.2d at 233. The court determined the similarities were "controlling." This does not mean the court found the similarities dispositive or gave no weight to the proximity of the uncharged allegations; it simply means the court found, based on the "remarkable" similarities, the probative value of the evidence was not substantially outweighed by its prejudicial effect. " '[R]easonable minds [can] differ' about

whether such evidence is admissible without requiring reversal under the abuse of discretion standard." *Donoho*, 204 Ill. 2d at 186, 788 N.E.2d at 723 (quoting *People v. Illgen*, 145 Ill. 2d 353, 375-76, 583 N.E.2d 515, 524-25 (1991)). The trial court did not abuse its discretion in admitting the allegations of prior sexual abuse to demonstrate propensity pursuant to section 115-7.3 of the Code of Criminal Procedure (725 ILCS 5/115-7.3 (West 2010)).

¶ 35                                    III. CONCLUSION

¶ 36        For the reasons stated, we affirm the trial court's judgment. As part of our judgment, we grant the State its $50 statutory assessment against defendant as costs of this appeal. 55 ILCS 5/4-2002 (West 2012).

¶ 37        Affirmed.