NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2026 IL App (4th) 250661-U

NO. 4-25-0661

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
June 4, 2026
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Winnebago County |
| STEPHEN MICHAEL CROOM II, | ) | No. 21CF1767 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Debra D. Schafer, |
| | ) | Judge Presiding. |

JUSTICE GRISCHOW delivered the judgment of the court.
Justices DeArmond and Harris concurred in the judgment.

**ORDER**

¶ 1    *Held*: The appellate court (1) reversed defendant's conviction for criminal sexual assault based on digital anal penetration because there was insufficient evidence of force or threat of force and vacated the associated sentence and (2) affirmed defendant's remaining two convictions for criminal sexual assault, concluding the trial court did not abuse its discretion in admitting propensity evidence, defendant failed to show prejudice resulting from any deficiencies in *Krankel* counsel's representation (see *People v. Krankel*, 102 Ill. 2d 181 (1984)), and defendant failed to show the court committed a clear and obvious error in sentencing.

¶ 2    Defendant, Stephen Michael Croom II, was convicted after a jury trial of three counts of criminal sexual assault (720 ILCS 5/11-1.20(a)(1) (West 2018)). The trial court sentenced defendant to 12 years in prison on each count, to be served consecutively. Defendant appeals, arguing (1) the State failed to prove him guilty beyond a reasonable doubt of criminal sexual assault based on digital penetration; (2) the court improperly admitted propensity evidence; (3) defendant was denied the effective assistance of counsel appointed pursuant to

*People v. Krankel*, 102 Ill. 2d 181 (1984); and (4) the court committed error at sentencing when it failed to consider a statutory mitigating factor. We reverse defendant's conviction and vacate his sentence on the digital penetration count but otherwise affirm.

¶ 3                                                    I. BACKGROUND

¶ 4            Defendant was indicted on four counts of criminal sexual assault (720 ILCS 5/11-1.20(a)(1) (West 2018)), each alleging defendant committed a different form of sexual penetration of the victim, M.B., by force or threat of force. Count I alleged defendant put his sex organ in the sex organ of M.B. Count II alleged defendant put his sex organ in the anus of M.B. Count III alleged defendant put his mouth on the sex organ of M.B. Count IV alleged defendant digitally penetrated the anus of M.B.

¶ 5            Prior to trial, the State filed a motion *in limine* to admit evidence of separate acts of sexual conduct as evidence of propensity under section 115-7.3(a)(1) of the Code of Criminal Procedure of 1963 (Procedure Code) (725 ILCS 5/115-7.3(a)(1) (West 2022)). The State sought to introduce evidence from a separately charged case, an alleged sexual encounter between defendant and T.T. The State also sought to introduce evidence of a sexual assault conviction from Wisconsin. After a hearing, the trial court ruled that the sexual encounter with T.T. was admissible. However, the court ruled the entire encounter with T.T., specifically, the allegations of physical violence by defendant, was not admissible unless the defense opened the door. Thereafter, defendant filed an answer to the State's motion for disclosure, stating defendant was going to raise the affirmative defense of consent to not only the charged offense but also to the allegations of T.T. In response to the affirmative defense of consent, the State sought to revisit the motion *in limine*. The State argued, as defendant raised the defense of consent, his entire relationship with T.T. was relevant. Defendant's trial counsel agreed the entire encounter was

relevant and stated he had no problem with the State delving into the entire encounter. In its oral ruling, the court informed the State that, as defendant was asserting all sexual activity with T.T. was consensual, the State could delve into the entire interaction with T.T., including the acts of physical violence, during its case in chief. The court required a limiting instruction, which could be read before or after T.T.'s testimony, based on defendant's preference. The court's written ruling stated its prior ruling on the motion *in limine* was modified, so "if evidence of consensual sexual contact between the defendant and T.T. [was] presented at trial in the above captioned case, evidence of the physical altercation between T.T. and the defendant the night before the events charged in the indictment would be admissible."

¶ 6       At trial, which took place in September 2022, M.B. testified she met defendant on a dating website on December 7, 2018. M.B. identified defendant in court. M.B. was living in Janesville, Wisconsin, and defendant invited M.B. to a party in Rockford, Illinois. Defendant drove to Janesville and picked up M.B. M.B. admitted she had smoked some methamphetamine earlier in the day, prior to meeting defendant. She also admitted she was on probation in Wisconsin on a charge of possession of methamphetamine for an incident that occurred about three months after the incident with defendant. She testified she and defendant smoked marijuana together. Upon arriving in Rockford, defendant and M.B. stopped at a liquor store, where defendant bought some wine and M.B. bought a sports drink. After the liquor store, rather than going to the party, they returned to defendant's apartment. M.B. testified she sat on the couch with defendant, and she drank a glass of wine. Defendant gave her a back rub and massaged her thighs. It made M.B. a little uncomfortable, because she did not know him very well.

¶ 7       M.B. told defendant she was hungry, and he made her a chicken potpie. She ate the potpie in defendant's bedroom. After she was done eating, defendant turned off the lights.

M.B. testified she was a little scared and a little dizzy, so she went into the bathroom to splash some water on her face. After leaving the bathroom, M.B. could not find the light switch to turn the lights back on, and she sat next to defendant on his bed at his request. The room was warm, so M.B. took off her sweater and pants and put on one of defendant's tank tops. Defendant started to massage her thighs and her rear and told M.B. to lie down. M.B. initially did not want to lie down, but she was tired, so she did. Defendant took off M.B.'s underwear and started performing oral sex on M.B. M.B. said "that was fine," but then defendant penetrated her anus with his finger, which was painful. M.B. told defendant to stop, but he did not stop either action. M.B. stated she started screaming in pain. Defendant then "flipped" her over onto her stomach and penetrated her anus with his penis. M.B. testified she continued to scream at defendant to stop, but he did not stop. Defendant prevented M.B. from disengaging and turning onto her back. After M.B. was able to turn over onto her back, defendant penetrated her vagina with his penis and ejaculated in her vagina. Afterward, defendant wiped M.B. off with a washcloth. Defendant asked if M.B. thought he had raped her, and she responded "no" because she was "afraid of what he would do if [she] said yes." Defendant told M.B. he would take her home in the morning, but M.B. called an Uber while defendant was sleeping. M.B. did not immediately contact law enforcement, but she went to the hospital several days later. M.B identified a photograph she took of a large bruise on her back, which she testified was caused by defendant holding her down while on her stomach.

¶ 8     Prior to the testimony of the propensity witness, T.T., the jury was given a limiting instruction. The jury was instructed that the evidence of defendant's encounter with T.T was relevant on the issue of defendant's propensity to commit criminal sexual assault and it was for the jury to determine whether defendant was involved and the weight to be given to the

evidence. T.T. testified she met defendant on a dating website in late March 2021. On March 28, 2021, defendant sent an Uber to pick T.T. up from her home in Waukegan, Illinois, and bring her to his apartment in Rockford. When she arrived, defendant's young son was present. T.T. stayed overnight at defendant's apartment, and she and defendant had consensual sex. The next day, they dropped defendant's son off with his mother and went to the mall. Later, back at defendant's apartment, T.T. and defendant got into an argument. During the argument, defendant put his hands on her neck and choked her. An hour or two later, they went to bed, and T.T. could not recall but believed they again engaged in consensual sex. The following day, she and defendant went to hang out with three other couples at the home of one of defendant's friends. At the friend's home, T.T. kissed one of the other girls. When defendant and T.T. later returned to defendant's apartment, defendant put his hands on her neck and "thrash[ed]" her around, yelling at her about kissing the other girl. Defendant threw T.T. on the bed and slapped her at least 10 times across the face. After T.T. told defendant she was going to call the police, defendant took her phone, put it under running water in the bathtub, and then hid the phone from her. T.T. testified she left defendant's apartment in her bare feet. She was not familiar with the area, and she was unsuccessful in alerting any neighbors or passing cars, so she returned to defendant's apartment. Defendant returned her phone to her, and they went to sleep.

¶ 9 T.T. testified she woke up to defendant touching her vaginal area and trying to have sex with her. T.T. told him no, and defendant got angry. He got out of bed, ripped the covers off T.T., and began yelling at her. Defendant grabbed T.T. by the shoulders and threw her back, causing her head to strike the wall. T.T. told defendant she was not consenting to sex, but she did not resist him having sex with her. Thereafter, defendant left the apartment for a few hours. T.T. testified defendant cooked food for them after he returned. T.T. took a bath and

texted her friend for money so that she could arrange for a ride so she could leave defendant's apartment. After her friend sent her money, in the early morning hours of April 1, 2021, T.T. ordered a Lyft for a ride to the hospital in Rockford. Police officers met her at the hospital to take her statement. T.T. identified photographs of some of her injuries, which included a bruise on the back of her head, a split bottom lip, and bruises on her arms and legs. She also testified she had difficulty swallowing. After leaving defendant's apartment, T.T. never saw defendant in person again. She did, however, continue to communicate with defendant through telephone conversations and text messages. T.T. testified she continued communicating with defendant until early June 2021 so she could get him to admit he had assaulted her. In some of the text messages, T.T. told defendant she loved him. T.T. testified she does not recall sending those messages, but she probably did send them in her effort to get defendant to admit what he had done.

¶ 10      Kaylee Bianchi testified she was working as a registered nurse in Javon Bea Hospital on April 1, 2021, when T.T. came into the emergency department. Bianchi was a specially trained sexual assault nurse examiner, and she conducted the examination and assessment of T.T. Bianchi conducted a head-to-toe physical examination of T.T., noting several areas of tenderness, redness, and bruising.

¶ 11      After the State rested, defendant moved for a directed verdict on all four counts. The trial court directed a verdict on count III, which alleged defendant put his mouth on the sex organ of M.B. The remainder of the motion was denied.

¶ 12      Matthew Weber, an investigator, testified for the defense. He testified that he took photographs of defendant's neighborhood. Defendant lived in a residential neighborhood, with approximately 14 homes on the same block as defendant's apartment. Weber did not check to see

if any of those homes were occupied. Weber also mapped the distance from defendant's apartment to a McDonald's that was open 24 hours a day, which was 1,485 feet from defendant's apartment, and to a police station, which was 2,283 feet from defendant's apartment.

¶ 13    Debra Riles, who manages property for her son, testified defendant had been a tenant for four to five years, until he left about a year before the trial. Defendant resided in the upper unit of a two-unit building. Riles believed the lower unit was occupied on December 7, 2018, but she was not sure. Riles did not get any noise complaints on that day; in fact, she never had any noise complaints about defendant.

¶ 14    When the trial court asked defendant if he was going to testify, defendant stated he was not. However, the court noted there was a long pause before defendant answered, so it further questioned defendant to confirm it was his decision not to testify. The following colloquy took place:

"THE COURT: Okay. Well, that was about 15 seconds. So we're going to have to talk about that long pause between my question and your answer.

As I told you before, the decision is yours. I'm not trying to talk you into or out of anything. I just want to make sure that you understand that it's your decision. If the attorneys think it's a bad idea, you still get to testify if that's what you want. If you don't want to and they think that you should, well then you don't have to testify because it's ultimately your decision.

I understand it can be a difficult decision. But I just need to make sure that you're making that decision freely and voluntarily. In the event that, whichever way the case goes, I don't want you regretting whatever your decision was.

So is it your decision not to testify? Let me ask you first—

[DEFENDANT]: I was counseled it wouldn't be advantageous for me to testify.

THE COURT: Okay.

[DEFENDANT]: I listen to the counsel.

THE COURT: Okay. Do you need any additional time to talk to your attorneys about this?

[DEFENDANT]: No.

THE COURT: Okay.

[DEFENDANT]: No, ma'am.

THE COURT: So it sounds like you're taking the advice of your attorneys by saying that you're not going to testify.

[DEFENDANT]: Yes, ma'am.

THE COURT: All right. And so it—do you feel like you are being forced into a position?

[DEFENDANT]: I'm being forced and backed in this whole corner with two different scenarios, so no, not forced.

THE COURT: Okay. Has anyone promised you anything in order to get you to make this decision?

[DEFENDANT]: No, ma'am.

THE COURT: All right. You're making the decision freely and voluntarily?

[DEFENDANT]: Yes, ma'am.

THE COURT: All right. So what it sounds like is you are making the

decision, and you're hoping that you don't regret it. Is that about right?

[DEFENDANT]: Yes, ma'am."

¶ 15　　The defense rested, and the matter proceeded to closing arguments. Thereafter, the jury found defendant guilty of the remaining three counts of criminal sexual assault. Defendant filed a motion for a new trial, followed by an amended motion for a new trial, arguing, *inter alia*, he was not proven guilty beyond a reasonable doubt and the trial court erred in denying his motion for a directed verdict as to all counts; the court erred in granting the State's motion *in limine* to allow the propensity testimony of T.T.; defendant was denied a fair trial when the State exceeded the *in limine* ruling; and the court erred in allowing the State to make inappropriate and prejudicial arguments. Thereafter, defendant filed a *pro se* amended motion for a new trial, adding claims that his trial counsel rendered ineffective assistance of counsel.

¶ 16　　The trial court held a preliminary *Krankel* hearing and found there was a basis for possible neglect, so it appointed *Krankel* counsel. At the *Krankel* hearing, defendant's trial counsel was questioned and testified regarding defendant's allegations of neglect. The court found there was no showing of deficiencies in trial counsel's performance for failing to locate the nurse who examined M.B. in the hospital or for failing to call as a witness the police officer who interviewed M.B. Both would have potentially testified the encounter between M.B. and defendant began as a consensual sexual encounter, but M.B. readily acknowledged it was initially consensual. The court further found no issue with trial counsel's failure to call as witnesses the people from the party with T.T. Defendant contended at least one of them would testify T.T.'s behavior after the attack was inconsistent with that of a sexual assault victim. However, T.T.'s testimony regarding her numerous text messages with defendant after the attack placed that issue before the jury. The text messages were available to the jury if it had asked for

them, and the testimony related to a propensity witness, not the victim. Further, there was no error relative to defendant's decision not to testify. The court found it was clearly trial counsel's opinion that defendant should not testify. However, the court concluded, based on its extended colloquy with defendant before accepting his decision not to testify, the decision not to testify was made by defendant. The court could not find that trial counsel's performance fell below an objectively reasonable standard or, if it had, the outcome would have been different. The *Krankel* motion was denied, and the matter was set for a hearing on the amended motions for a new trial.

¶ 17 Following the denial of the *Krankel* motion, defendant chose to waive counsel and proceed *pro se*. He filed a petition for relief from the *Krankel* order, reiterating his claims of ineffectiveness of trial counsel and arguing *Krankel* counsel did not fully present the claims of ineffectiveness. The trial court held a hearing on what it interpreted to be a motion to reconsider, where defendant appeared *pro se*. After questioning *Krankel* counsel, the court denied the motion to reconsider.

¶ 18 Defendant filed another amended motion for a new trial. Defendant alleged, *inter alia*, the trial court erred in granting the State's motion *in limine* to admit the propensity evidence of T.T.; he was not proven guilty beyond a reasonable doubt as to the count involving digital anal penetration because there was no evidence of force; trial counsel was ineffective; and *Krankel* counsel was ineffective. The court denied the amended motion for a new trial.

¶ 19 The matter proceeded to sentencing. The presentence investigation report (PSI) indicated defendant had two prior felony convictions. Defendant reported he had two young children, a three-year-old son and a two-year-old daughter, with different mothers. Defendant reported he shared custody of both children, although he could not recall his daughter's mother's name during the presentence interview. He also reported he was court-ordered to pay child

support for his son. The State submitted certified copies of defendant's 1999 conviction for armed robbery and his 2018 sexual assault conviction in Wisconsin. The trial court sentenced defendant to 12 years in prison for each of the three counts. It stated it considered the evidence from trial, the PSI, the history, character, and attitude of defendant, the evidence and arguments at sentencing, and defendant's statement in allocution. It also considered the statutory matters in aggravation and mitigation. The court found several aggravating factors were applicable, specifically, defendant's criminal history, the necessity to deter others from committing the same crime, and his conduct caused or threatened serious harm. The court found no factors in mitigation should be accorded weight in favor or minimizing defendant's sentence. Based on defendant's attitude in court, the court could not say he was unlikely to commit another crime, even though he now had children.

¶ 20       This appeal followed.

¶ 21                          II. ANALYSIS

¶ 22       On appeal, defendant argues (1) the State failed to prove him guilty beyond a reasonable doubt of the count of digital anal sexual penetration; (2) the trial court improperly admitted propensity evidence; (3) he was denied the effective assistance of *Krankel* counsel; and (4) the court erred in sentencing him when it failed to consider a statutory mitigating factor.

¶ 23                    A. Proof Beyond a Reasonable Doubt

¶ 24       Defendant contends he was not proven guilty beyond a reasonable doubt of count IV, which alleged criminal sexual assault for the act of digitally penetrating the anus of M.B. Defendant contends the State failed to present evidence of any force or threat of force beyond the act itself.

¶ 25 "In reviewing the sufficiency of the evidence in a criminal case, this court asks whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt." *People v. Jones*, 2023 IL 127810, ¶ 28. A reviewing court's role is not to retry the defendant. *Id.* "A criminal conviction will not be overturned unless the evidence is so unreasonable, improbable, or unsatisfactory as to justify a reasonable doubt of the defendant's guilt." *Id.*

¶ 26 Defendant was charged with four individual acts of criminal sexual assault against M.B. To prove defendant guilty of each allegation of criminal sexual assault, the State had to prove defendant committed an action of sexual penetration against M.B. by the use of force or threat of force. See 720 ILCS 5/11-1.20(a)(1) (West 2018). As defendant raised the affirmative defense of consent, the State also had the burden to prove lack of consent beyond a reasonable doubt. See *id.* § 11-1.70(a); *People v. Haywood*, 118 Ill. 2d 263, 274 (1987).

¶ 27 Section 11-0.1 of the Criminal Code of 2012 (Criminal Code) defines " '[f]orce or threat of force' " as

> "the use of force or violence or the threat of force or violence, including, but not
> limited to, the following situations:
>
> > (1) when the accused threatens to use force or violence on the
> > victim or on any other person, and the victim under the circumstances
> > reasonably believes that the accused has the ability to execute that threat;
> > or
>
> > (2) when the accused overcomes the victim by use of superior
> > strength or size, physical restraint, or physical confinement." 720 ILCS
> > 5/11-0.1 (West 2018).

¶ 28        There is no specific standard establishing the amount of force necessary to sustain

a conviction for criminal sexual assault; rather, each case must be considered on its own facts.

*People v. Gonzalez*, 2019 IL App (1st) 152760, ¶ 38. "The force necessary to prove criminal

sexual assault requires something more than the force inherent in the sexual penetration itself."

*Id.* "The element of force refers to actions of the defendant that physically compel the victim to

submit to the act of sexual penetration." *People v. Mpulamasaka*, 2016 IL App (2d) 130703,

¶ 74.

¶ 29        All four of the charged acts occurred during a several minute encounter between

M.B. and defendant, which admittedly started consensually but ended with the two acts of

criminal sexual assault that defendant does not challenge on appeal. As M.B. consented to the

first act, oral sex, the trial court appropriately directed a verdict on that count (count III). At the

other end of the continuum of the encounter between M.B. and defendant are the two acts of

penile penetration to which M.B. did not consent and were accomplished by force or threat of

force (counts I and II). The issue on appeal is where on the continuum the act of digital anal

penetration (count IV) falls. On appeal, it is undisputed M.B. sought to withdraw her consent at

the time of the digital anal penetration. A showing of lack of consent, though, is not sufficient to

prove the separate element of force. See *id.* ("A conviction of criminal sexual assault cannot be

sustained by establishing merely that the victim did not consent."); see also *Haywood*, 118 Ill. 2d

at 274 ("[C]onsent is made a defense to be raised by the accused to rebut evidence of force

presented by the State.").

¶ 30        Defendant argues from the time M.B. verbally withdrew consent until the time

defendant turned M.B. onto her stomach and continued sexual activity, there was no evidence of

force or threat of force. Conversely, the State contends it sufficiently proved force under one or

more legal theories. First, the State acknowledges the force used by defendant occurred after defendant digitally penetrated M.B.'s anus but argues it was all part of the same assault. Second, the State contends defendant passively forced M.B. to continue the digital anal penetration. Lastly, the State contends M.B. was overcome by defendant's superior size and strength. We will address each contention in turn.

¶ 31        The State argues force used during an assault, even when the force comes after the sexual act, can be sufficient to prove the element of force required to prove criminal sexual assault, citing *People v. Colley*, 188 Ill. App. 3d 817 (1989), and its progeny. We are not persuaded. In *Colley*, the defendant was charged with aggravated criminal sexual assault, requiring proof of bodily harm that occurred during the criminal sexual assault. *Id.* at 820. The *Colley* court concluded stab wounds occurring soon after the sexual acts were sufficiently close in time to the sexual acts so that they could be said to have been committed during the sexual assault. *Id.*; see *People v. Thomas*, 234 Ill. App. 3d 819, 825 (1992) (affirming the defendant's conviction for aggravated criminal sexual assault, finding the defendant burned the victim with a hot fork as "part of an unbroken series of events," which were "both very near in time and closely linked to the forced sexual acts"); see also *People v. Fryer*, 247 Ill. App. 3d 1051, 1058 (1993) (finding the physical injuries that the defendant inflicted on the victim "were sufficiently close to the sexual assault so that the injuries could be found to have been committed during the commission of the sexual assault"). Here, defendant was not charged with aggravated criminal sexual assault, so the issue of whether statutory aggravating circumstances existed during the commission of the criminal sexual assault was not before the court. See 720 ILCS 5/11-1.30(a) (West 2018). Rather, defendant was charged with criminal sexual assault, where, "[b]y definition, [the force or threat of force] will precede the act of sexual penetration by at least some

amount of time—seconds, minutes, whatever amount of time it takes to 'overcome' the victim." (Emphasis omitted.) *People v. Smith*, 2019 IL App (1st) 161246, ¶¶ 30-31.

¶ 32    The State contends defendant passively forced M.B. to submit to the digital anal penetration by refusing to disengage, which prevented M.B. from disengaging. "One can, in a manner of speaking, passively force someone to continue with the sex act by using one's own bodily inertia to prevent the partner from disengaging. This would be force beyond that inherent to the sex act itself." *People v. Denbo*, 372 Ill. App. 3d 994, 1008 (2007). In *Denbo*, the issue before the court was consent and whether the victim's actions operated as an objective withdrawal of consent to what began as a consensual sexual act. *Id.* at 1008. However, during its discussion of consent, the court hypothesized a defendant's continuation of a sex act that prevented the victim from disengaging could be considered passive force as defined by the Criminal Code. *Id.* Here, prior to the penile anal penetration, where M.B. testified she could not disengage, there was no testimony she could not disengage from defendant beforehand.

¶ 33    Lastly, the State contends M.B. was overcome by defendant's superior size and strength. See *Gonzalez*, 2019 IL App (1st) 152760, ¶ 38 ("When considering the evidence of force, we may consider the size and strength of the defendant and the victim as well as the place and conditions under which the incident occurred."). The State acknowledges there was no direct testimony regarding defendant's size or strength but argues the jury had the opportunity to view defendant and M.B. at trial. Also, M.B. was alone inside defendant's bedroom, and she testified she was hot and dizzy. We conclude there is no evidence that M.B. was overcome by force or threat of force until the first act of force, which was the act of flipping M.B. over and, subsequently, holding her down. That force did not occur until after the digital anal penetration had ceased. There was no testimony or other evidence that defendant's body was on top of

M.B.'s body, thereby using his greater size to prevent her from disengaging. See *Mpulamasaka*, 2016 IL App (2d) 130703, ¶ 74 ("Force can be established by evidence that the defendant used his bodily inertia to prevent the victim from disengaging."). In fact, M.B.'s testimony was that she was initially sitting on the edge of the bed and then she lay down and defendant removed her underwear and began performing oral sex. In addition, although M.B. was in defendant's bedroom, in his apartment, there was no testimony that M.B. attempted to leave and defendant blocked her exit. *Cf. Gonzalez*, 2019 IL App (1st) 152760, ¶ 39 (holding a jury could reasonably infer a 35-year-old defendant overcame a teenager by physical confinement when he blocked the teen from leaving the back seat of the defendant's locked vehicle).

¶ 34        After reviewing the record, even viewing all the evidence presented at trial in the light most favorable to the prosecution, we conclude the evidence was insufficient for a rational trier of fact to find defendant used force or a threat of force to compel M.B. to submit to the act of digital anal penetration. Therefore, defendant's conviction for criminal sexual assault based upon digital anal penetration (count IV) must be reversed.

¶ 35                    B. Admissibility of Propensity Evidence

¶ 36        Defendant argues the trial court abused its discretion by admitting propensity evidence. Defendant argues the propensity evidence was substantially and unfairly more prejudicial than probative and became a focus at trial. Alternatively, defendant argues his trial counsel was ineffective for not challenging the admissibility of the allegation of violence by defendant against T.T., which defendant contends was the most prejudicial portion of the propensity evidence.

¶ 37        Generally, evidence is admissible only if it is relevant. Ill. R. Evid. 402 (eff. Jan. 1, 2011). Relevant evidence, however, "may be excluded if its probative value is substantially

outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." Ill. R. Evid. 403 (eff. Jan. 1, 2011). Evidence of other crimes is generally inadmissible to show a defendant's propensity to commit the charged criminal conduct, but it may be admissible for other reasons, such as to demonstrate "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Ill. R. Evid. 404(b) (eff. Jan. 1, 2011); see *People v. Pikes*, 2013 IL 115171, ¶ 11. Propensity evidence is not inadmissible because it is irrelevant; rather, "it is objectionable because such evidence has 'too much' probative value." *People v. Donoho*, 204 Ill. 2d 159, 170 (2003).

¶ 38      However, in certain cases, such as those in which the defendant is charged with criminal sexual assault, evidence of other crimes may be admissible to demonstrate propensity. See 725 ILCS 5/115-7.3(b) (West 2022); *People v. Watts*, 2022 IL App (4th) 210590, ¶ 40. If the other-crimes evidence meets the initial statutory requirements, the evidence may be admissible if it is relevant and the probative value is not substantially outweighed by its prejudicial effect. *People v. Smith*, 2015 IL App (4th) 130205, ¶ 21. In weighing the probative value against the prejudicial effect, courts may consider: "(1) the proximity in time to the charged or predicate offense; (2) the degree of factual similarity to the charged or predicate offense; or (3) other relevant facts and circumstances." 725 ILCS 5/115-7.3(c) (West 2022). A trial court's admission of other-crimes evidence is reviewed for an abuse of discretion. *Smith*, 2015 IL App (4th) 130205, ¶ 22.

¶ 39      Before reaching the merits of defendant's argument, we first address the State's argument that defendant invited the error. The State contends, after the trial court allowed the evidence regarding T.T. with limitations and defendant asserted the defense of consent, defendant agreed to the admission of the entire altercation with T.T.

- 17 -

¶ 40 "Under the doctrine of invited error, an accused may not request to proceed in one manner and then later contend on appeal that the course of action was in error." *People v. Carter*, 208 Ill. 2d 309, 319 (2003). Invited error acts as a procedural default, akin to estoppel. *In re Detention of Swope*, 213 Ill. 2d 210, 217 (2004). Here, the State filed a motion *in limine* to admit evidence of the sexual encounter with T.T. as propensity evidence under section 115-7.3 of the Procedure Code (725 ILCS 5/115-7.3 (West 2022)). Defendant opposed the admission of any evidence regarding the encounter with T.T. The motion was granted, but the trial court barred any evidence of physical violence with T.T. unless defendant opened the door. Thereafter, defendant asserted the affirmative defense of consent with respect to T.T. The State then sought to revisit the motion *in limine*, arguing, because defendant raised the defense of consent, his entire relationship with T.T. was relevant. Defendant's trial counsel agreed the entire encounter was relevant and did not oppose the State delving into it.

¶ 41 Defendant initially opposed the admission of any evidence of his encounter with T.T. Defendant's trial counsel did not acquiesce to the admission of evidence of the entire encounter with T.T. until after the State's motion *in limine* was granted and defendant asserted the affirmative defense of consent as a result. Once the trial court ruled that evidence of defendant's encounter with T.T. was admissible, defendant was entitled to minimize the effect of that evidence. See *People v. Williams*, 161 Ill. 2d 1, 34-35 (1994) (holding that once the trial court ruled the defendant's prior conviction was admissible for impeachment, the defendant was entitled to attempt to minimize the damage by introducing it himself and by using it to whatever advantage might be made of it). In that regard, it is clear, to blunt the testimony of T.T., trial counsel not only asserted the defense of consent but also intended to delve into the facts of the entire encounter as a matter of trial strategy. Thus, we conclude trial counsel did not inject the

error into the proceedings, so as to preclude review by this court. See *id.* at 34 ("The rule that a party cannot object on appeal to evidence which was introduced by that party does not apply where a motion to exclude the evidence was presented and denied."); *cf. Swope*, 213 Ill. 2d at 217 ("The rationale behind this well-established rule [of invited error] is that it would be manifestly unfair to allow a party a second trial upon the basis of error which that party injected into the proceedings.").

¶ 42 We turn to the merits of defendant's contention. Defendant relies on *People v. Lamonica*, 2021 IL App (2d) 200136, to support his contention that the circumstances of the instant offense and those involving T.T. were significantly different factually, so the trial court abused its discretion in allowing the propensity evidence. In *Lamonica*, the defendant was charged with the aggravated criminal sexual assault of a woman he met on a dating app. *Id.* ¶¶ 4, 6. The victim testified. *Id.* ¶¶ 6-16. The trial court also allowed a second victim to testify regarding the defendant's prior bad acts, partly to establish the defendant's propensity under section 115-7.3 of the Procedure Code. *Id.* ¶ 17. The appellate court found it was an abuse of discretion to allow the propensity witness to testify. *Id.* ¶¶ 52, 54. The court noted that, while the State presented one witness to prove the charged offense, it presented three witnesses to establish the prior bad act. *Id.* ¶ 52. Further, the court found, while there were some factual similarities, there were more factual dissimilarities, so the prejudicial effect outweighed the probative value. *Id.* ¶¶ 52-53. While the victim in the charged case testified the defendant penetrated her in the evening, after their date and while she was drunk, the propensity witness testified the defendant forcefully penetrated her in the morning, when she was sober. *Id.* ¶ 53. The court found, other than the defendant inviting the women to wine bars, the two incidents bore little resemblance to one another in any significant way. *Id.* ¶ 54.

¶ 43　　　　　This court distinguished *Lamonica* in *People v. Watts*, 2022 IL App (4th) 210590, ¶ 44. In *Watts*, the defendant was convicted of criminal sexual assault and aggravated criminal sexual abuse for assaulting a minor victim in the defendant's vehicle after the victim snuck out of her home to meet the defendant. *Id.* ¶¶ 1, 6. At trial, the State introduced evidence of three previous instances where the defendant was accused by other women of sexual assault. *Id.* ¶¶ 9-13. This court found the factual differences were much less meaningful than those in *Lamonica*. *Id.* ¶ 49. Each victim was introduced to show the defendant had a propensity to commit sexual assault. *Id.* In each case, the defendant invited young women who felt safe being alone with him to meet him, and in each case, the defendant had consumed alcohol. *Id.* The young women also consumed alcohol and were unable to legally consent. *Id.* The court concluded the primary factual difference, that the minor victim did not drink and could not consent because of her age, did not greatly reduce the probative value of the propensity evidence. *Id.*

¶ 44　　　　　Here, we conclude, like the court in *Watts*, the trial court considered the factual differences, but it did not abuse its discretion in concluding the factual differences were incidental to the purpose of the propensity evidence. See *id.* ¶ 47 ("[T]he differences must logically matter."). The court below engaged in a meaningful assessment of the probative value versus the prejudicial effect and initially concluded evidence of the encounter with T.T. was admissible, absent evidence of the allegations of physical violence. The court found those allegations were too dissimilar and were not relevant to the later alleged forced sexual activity with T.T., unless defendant opened the door. Defendant then opened the door by asserting the affirmative defense that his sexual activity with T.T. was consensual, which was also his defense in the instant case. That led the court to reevaluate the evidence of the entire encounter with T.T., and it determined the entire encounter with T.T. became relevant and admissible in the context of

the consent defense. Defendant's trial counsel agreed with that assessment. Although the trial court's amended *in limine* order was written in conditional terms, defendant had already advanced the condition by asserting consent.

¶ 45    As the trial court noted, defendant met M.B. and T.T. on dating sites and invited them both to his apartment. Both cases involved consensual sexual activity followed by nonconsensual sexual activity in defendant's apartment, in his bed. While we recognize the total amount of propensity evidence was greater than the total amount of direct evidence of the assault on M.B., it was not excessive and was relatively straightforward. See *id.* ¶¶ 59 (recognizing the greater quantity of propensity evidence, when three witnesses testified, but finding it did not result in a mini-trial or cause jury confusion). Ultimately, the standard of review controls, and we cannot say no reasonable person would have taken the position adopted by the trial court. See *People v. Wilson*, 2015 IL App (4th) 130512, ¶ 75 ("An abuse of discretion has occurred when the trial court's decision is arbitrary, fanciful, or unreasonable or when no reasonable person would take the position adopted by the trial court.").

¶ 46    Defendant contends his trial counsel was ineffective for asserting pretrial the defense of consent by T.T. and, thereafter, agreeing to the admission of T.T.'s claims of physical violence. In concluding this was not invited error, we acknowledged counsel initially objected to the admission of any evidence of the encounter with T.T. and, specifically, to the allegations of physical violence. However, after counsel asserted defendant's affirmative defense of consent, counsel agreed that evidence of the entire encounter with T.T. was admissible. Thus, it is within this factual framework that we address defendant's claim that his counsel was ineffective for failing to further object to the admission of the claims of physical violence against T.T.

¶ 47    Claims of ineffective assistance of counsel are governed by the familiar standard

- 21 -

set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "A defendant must show that his counsel's performance fell below an objective standard of reasonableness and that there is a reasonable probability that the result of the proceeding would have been different but for counsel's unprofessional errors." *Jones*, 2023 IL 127810, ¶ 51. In general, matters of trial strategy are immune from claims of ineffective assistance of counsel. *Id.*

¶ 48        Defendant argues his counsel's performance was deficient because after the trial court initially prohibited the admission of the allegations of violence with T.T., counsel asserted pretrial the defense of consent and agreed to the admission of the full encounter with T.T., including the allegations of physical violence. Also, defendant maintains his counsel then failed to argue in closing that the encounter with T.T. was consensual, instead asserting T.T. did not like defendant and she lacked credibility. Defendant contends this does not demonstrate a sound trial strategy but rather a lack of strategic planning.

¶ 49        After a careful review of the record, we disagree with defendant's characterization of his trial counsel's actions. It is undisputed that trial counsel originally opposed the admission of all the propensity evidence. After the trial court ruled some of T.T.'s testimony was admissible, trial counsel asserted the defense of consent to T.T.'s allegations of nonconsensual sex. The defense strategy was to seek to inject reasonable doubt on the issue of consent. Although trial counsel did not use the word "consent" in his closing argument, consent was an issue at trial. When both M.B. and T.T. alleged nonconsensual sexual activity with defendant, it was a reasonable trial strategy to challenge the credibility of those claims in an attempt to cast doubt on their claims of nonconsent. See *People v. Johnson*, 2015 IL App (3d) 130610, ¶ 31 ("Counsel's strategy does not constitute ineffective assistance simply because it was unsuccessful.").

¶ 50    Further, after the State's opening statement, which referred to T.T.'s allegations of physical violence, trial counsel objected, arguing the *in limine* order barred such evidence unless and until the defense opened the door by raising the issue of consent. Defendant argues this attempt to rely on the trial court's written *in limine* order, after asserting consent pretrial and agreeing to the additional evidence, indicates trial counsel did not understand what he agreed to and his performance was not objectively reasonable. We are puzzled by trial counsel's objection, considering his prior agreement, but do not view that the objection, which would have favored defendant if sustained, was evidence of his lack of understanding. Rather, it was a fair argument based upon the terms of the written order, which was framed in conditional terms. The objection was appropriately overruled because, at the time of the written order, the oral pronouncement of the court was that defendant had already asserted consent, so the State could present the evidence during its case-in-chief. See *People v. Smith*, 242 Ill. App. 3d 399, 402 (1993) (holding the oral pronouncement is the judgment of the court and controls when there is a conflict with the court's written order). Thus, defendant has not shown that, by his counsel's attempt to relitigate an issue in defendant's favor, his counsel's performance fell below an objective standard of reasonableness. As defendant failed to show deficient performance, he cannot show that he received ineffective assistance of counsel. See *People v. Cherry*, 2016 IL 118728, ¶ 24 ("Because a defendant must satisfy both prongs of the *Strickland* test to prevail, the failure to establish either precludes a finding of ineffective assistance of counsel.").

¶ 51                    C. *Krankel* Counsel

¶ 52    In a *pro se* motion for a new trial, defendant alleged his trial counsel provided ineffective assistance of counsel. The trial court conducted an initial inquiry into those allegations pursuant to *Krankel*. Finding the claims indicated possible neglect by trial counsel,

the court appointed *Krankel* counsel. *Krankel* counsel evaluated defendant's claims of ineffective assistance and proceeded to file a motion alleging defendant's trial counsel was ineffective for failing to locate, subpoena, or present several witnesses at defendant's trial. The motion further alleged trial counsel was ineffective for failing to publish the text messages between defendant and T.T. to the jury, failing to advance a meaningful defense, and improperly pressuring defendant to not testify. *Krankel* counsel represented defendant at the second-stage hearing on the claims, and the court ultimately denied defendant's motion alleging ineffective assistance of trial counsel.

¶ 53        Defendant acknowledges the appropriate process occurred in response to his claims of ineffective assistance of trial counsel, but he contends his *Krankel* counsel further provided ineffective assistance. Defendant argues the record indicates *Krankel* counsel only went through the motions and failed to conduct an independent investigation and act as a serious advocate for defendant. As evidence of this, defendant points to the fact that *Krankel* counsel objected to the State's participation in the second-stage *Krankel* hearing, which defendant argues indicates *Krankel* counsel was not prepared and did not understand the process. *Krankel* counsel also failed to provide any evidence or allegations detailing the proposed testimony of the witnesses not presented by trial counsel. Defendant contends prejudice should be presumed because *Krankel* counsel failed to fulfill his duties and basically deprived defendant of counsel. Alternatively, defendant contends *Krankel* counsel's failures were prejudicial because if counsel had conducted an independent investigation and presented available evidence, there was a reasonable probability the outcome of the *Krankel* proceedings would have been different.

¶ 54        The *Krankel* inquiry process proceeds in two stages. *People v. Downs*, 2017 IL App (2d) 121156-C, ¶ 43. First, the trial court makes a preliminary inquiry into the factual bases

of the defendant's claims of ineffective assistance of trial counsel. *Id.* At this stage, if the court determines the defendant's claims lack merit or pertain only to matters of trial strategy, there is no need to appoint new counsel to pursue the claims, and the defendant's motion may be denied. *Id.* However, if the court's preliminary inquiry shows possible neglect by trial counsel, new counsel (*i.e.*, *Krankel* counsel) should be appointed, and the matter proceeds to the second stage of the *Krankel* inquiry. *Id.* At the second stage, which consists of an adversarial and evidentiary hearing on the defendant's claims, the defendant is represented by the newly appointed *Krankel* counsel. *Id.* "The obligation to represent the defendant requires *Krankel* counsel to independently evaluate the defendant's *pro se* allegations of ineffective assistance of trial counsel and present those with merit to the trial court during the second-stage adversarial hearing." *Id.* ¶ 49. Here, the matter proceeded beyond the first stage, and *Krankel* counsel was appointed. *Krankel* counsel participated in the second-stage hearing.

¶ 55 As noted above, claims of ineffective assistance of counsel are governed by the familiar standard set forth in *Strickland*. "A defendant must show that his counsel's performance fell below an objective standard of reasonableness and that there is a reasonable probability that the result of the proceeding would have been different but for counsel's unprofessional errors." *Jones*, 2023 IL 127810, ¶ 51. A defendant must satisfy both prongs of the *Strickland* test to prevail on a claim of ineffective assistance of counsel, a rule which also applies to an adversarial evidentiary hearing conducted pursuant to *Krankel*. *People v. Boose*, 2025 IL App (4th) 231467, ¶ 37. The State does not address *Strickland*'s deficient performance prong, instead focusing on the argument that defendant cannot prevail because he cannot show prejudice resulting from any deficient performance by trial counsel. The State argues prejudice cannot be presumed in this

circumstance, and defendant has failed to show the result would have been different or the proceeding was fundamentally unfair.

¶ 56    In certain limited circumstances, a defendant does not need to show prejudice, and prejudice is presumed from ineffective assistance of counsel. *Downs*, 2017 IL App (2d) 121156-C, ¶ 40. Prejudice may be presumed when "(1) the defendant 'is denied counsel at a critical stage,' (2) counsel 'entirely fails to subject the prosecution's case to meaningful adversarial testing,' or (3) counsel is called upon to represent a client in circumstances under which no lawyer could prove effective assistance." *Cherry*, 2016 IL 118728, ¶ 25 (quoting *United States v. Cronic*, 466 U.S. 648, 659-61 (1984)). Defendant argues the first and second *Cronic* exceptions are applicable: prejudice should be presumed because his *Krankel* counsel failed to subject trial counsel's actions to meaningful adversarial testing and that failure deprived defendant of counsel at a critical stage of the proceedings.

¶ 57    "[T]he circumstances under which prejudice may be presumed occur only rarely." *Downs*, 2017 IL App (2d) 121156-C, ¶ 40. Here, we conclude the first *Cronic* exception does not apply to presume prejudice because *Krankel* counsel was appointed and represented defendant in those proceedings. Thus, although posttrial proceedings are a critical stage of criminal proceedings, defendant has not shown he was completely denied counsel at those proceedings. See *id.* ¶ 41 ("A posttrial motion has long been held to be a critical part of the criminal proceeding, and, as a result, the defendant is still entitled to constitutionally effective assistance of counsel."); see also *People v. Wilson*, 303 Ill. App. 3d 1035, 1044 (1999) (noting the first *Cronic* exception applies when counsel was either totally absent or prevented from assisting the accused during the critical stage of the proceeding).

¶ 58 The second *Cronic* exception applies "when counsel's effectiveness has fallen to such a low level as to amount not merely to incompetence, but to no representation at all." (Internal quotation marks omitted.) *Downs*, 2017 IL App (2d) 121156-C, ¶ 40. This exception is a narrow one, with infrequent application. *Cherry*, 2016 IL 118728, ¶ 26. It is not enough for counsel to fail to oppose the prosecution at specific points; rather, there must be a complete failure of *Krankel* counsel to subject trial counsel's actions to meaningful adversarial testing. *Id.* Defendant argues his *Krankel* counsel behaved as an advocate for his trial counsel or as a neutral investigator for the court, rather than as an advocate for defendant.

¶ 59 The posttrial motion filed by *Krankel* counsel asserted trial counsel was ineffective for failing to locate and subpoena the nurse who initially examined M.B., failing to subpoena the officer who took M.B.'s initial statement, failing to contact witnesses with information about the relationship between defendant and T.T., failing to present the testimony of the detective who interviewed T.T., failing to properly publish text messages between T.T. and defendant to the jury, failing to advance a meaningful defense, and pressuring defendant not to testify. At the hearing, *Krankel* counsel questioned trial counsel regarding his trial strategy and decisions at trial. *Krankel* counsel then proceeded to argue trial counsel was ineffective and defendant was entitled to a new rial. While it is possible *Krankel* counsel could have done more to develop defendant's claims, this is not a case where counsel "entirely fail[ed] to subject the prosecution's case to meaningful adversarial testing." (Internal quotation marks omitted.) *Id.* ¶ 25. Thus, we do not presume prejudice and analyze defendant's claims to determine whether he has met his burden of showing prejudice under *Strickland*.

¶ 60 To show prejudice under *Strickland*, a defendant bears the burden of showing, had *Krankel* counsel presented certain evidence or arguments, the result of the proceeding would

have been different. *Boose*, 2025 IL App (4th) 231467, ¶¶ 37, 43. Defendant argues, had *Krankel* counsel conducted an independent investigation and presented available evidence, the trial court would have granted defendant's motion for a new trial. In support, defendant points to the affidavits of two witnesses who were at the party with T.T., which could have been used to further challenge T.T.'s credibility, and the nurse referenced in M.B.'s medical records, who could have been called to further challenge M.B.'s credibility. In denying defendant's motion, the court considered M.B.'s medical records and the possible testimony by the nurse who examined M.B., as well as the possible testimony by the investigating officer, and found, as M.B. acknowledged the sexual contact with defendant began consensually, neither witness would have provided new information to the jury. The court also considered the witnesses from the party with T.T., concluding their testimony would not have been particularly helpful, as evidence of T.T.'s behavior after the incident with defendant was already before the jury. As for the text messages between defendant and T.T., the court noted they were admitted into evidence but were not published to the jury, absent a jury request for them. The court acknowledged trial counsel's opinion, expressed to defendant, that defendant should not testify. However, the court had an extensive conversation with defendant in open court, and it was defendant's decision not to testify. The court concluded it could not find trial counsel's performance fell below an objectively reasonable standard or the outcome of the proceedings would differ.

¶ 61        "While this court typically reviews a claim of ineffective assistance *de novo*, 'if the trial court has properly conducted a *Krankel* inquiry and has reached a determination on the merits of the defendant's *Krankel* motion, we will reverse only if the trial court's action was manifestly erroneous.' " *Boose*, 2025 IL App (4th) 231467, ¶ 43 (quoting *People v. Jackson*, 2020 IL 124112, ¶ 98). After reviewing the record, we conclude the court's determination that

defendant failed to establish prejudice was supported by the record and not manifestly erroneous. See *Jackson*, 2020 IL 124112, ¶ 98 ("Manifest error is error that is clearly evident, plain, and indisputable.").

¶ 62                                    D. Sentencing

¶ 63          Defendant argues the trial court improperly failed to consider a statutory factor in mitigation at his sentencing. Defendant concedes he forfeited the issue by failing to file a motion to reconsider his sentence but asks this court to consider the issue under the first prong of the plain error rule. The State contends there was no clear and obvious error, so there can be no plain error.

¶ 64          An issue is preserved for review when a defendant makes a contemporaneous objection before the trial court to the alleged error and challenges the issue in written posttrial motion. *People v. Winchester*, 2016 IL App (4th) 140781, ¶ 67. "The forfeiture rule is intended to bar claims from review when they are not first considered by the trial court." *Id.* The plain error rule is a narrow exception to forfeiture principles that allows a reviewing court to review a forfeited clear and obvious error under certain circumstances. *People v. Johnson*, 2024 IL 130191, ¶ 42; see Ill. S. Ct. R. 615(a) (eff. Jan. 1, 1967). There are two alternative prongs to the plain error rule. *Johnson*, 2024 IL 130191, ¶ 43. A reviewing court may review a forfeited error under the first prong if the evidence was so close the error alone threatened to tip the scales of justice against the defendant. *Id.* Alternatively, the second prong of the plain error rule allows review of errors that are so serious they affected the fairness of the defendant's trial, regardless of the closeness of the evidence. *Id.* Under both prongs, the defendant bears the burden of persuading the reviewing court to excuse the forfeiture. *Id.* Here, defendant argues first-prong plain error.

¶ 65          The first step in the plain error analysis requires the defendant to demonstrate a clear or obvious error was committed. *People v. Prather*, 2022 IL App (4th) 210609, ¶ 17. We initially note defendant's sentences in this case fell within the applicable sentencing range and are, therefore, presumptively valid. See *People v. Sauseda*, 2016 IL App (1st) 140134, ¶ 12. In addition, "[t]here is a strong presumption the trial court based its sentencing judgment on proper legal reasoning." *Winchester*, 2016 IL App (4th) 140781, ¶ 72. When determining and weighing factors in mitigation and aggravation, and in exercising its discretion and imposing sentence, a trial court has broad discretion, so this court gives the trial court's ruling great weight and deference. *People v. Solis*, 2019 IL App (4th) 170084, ¶ 23. Defendant argues the above presumptions do not apply because the trial court specifically did not consider all the factors in mitigation, as evidenced by the court's statement, "In terms of factors in mitigation, I don't believe that any of them do apply."

¶ 66          Section 5-5-3.1(a) of the Unified Code of Corrections (730 ILCS 5/5-5-3.1(a) (West 2024)) lists factors in mitigation that "shall be accorded weight in favor of withholding or minimizing a sentence of imprisonment." One such factor is "[t]he defendant *** is the parent of a child or infant whose well-being will be negatively affected by the parent's absence." *Id.* § 5-5-3.1(a)(18).

¶ 67          At defendant's sentencing hearing, the State argued several aggravating factors applied, specifically, defendant's criminal history, the necessity to deter others, and defendant's conduct caused or threatened serious harm. The State argued none of the factors in mitigation were applicable. Defendant represented himself at sentencing and did not specifically address any of the statutory factors. The trial court, in rendering its sentence, indicated it considered the evidence from the trial, the PSI, the evidence and arguments at the sentencing hearing, and

defendant's statement in allocution. It also considered all the statutory aggravating and mitigating factors, whether it mentioned each particular factor. In terms of the statutory factors in mitigation, the court stated, "I don't believe that any of them do apply," and then proceeded to discuss why some did not apply to defendant. The court found defendant's character and attitude did not show he was unlikely to reoffend, and the fact he had children did not impact that conclusion. We conclude, read in context, the court's comment that it did not believe any mitigating factors applied did not mean it did not consider all the mitigating factors. See *People v. Maury*, 2025 IL App (4th) 220887, ¶ 106 (stating, in determining whether a sentence was based on proper statutory factors, the reviewing court reviews the record as a whole, rather than focusing on a few words or statements). Rather, the court's sentencing commentary indicates it considered all the statutory factors but found no statutory mitigating factors applied to withhold or minimize a sentence of imprisonment. Because no error occurred, there can be no plain error. Accordingly, we honor defendant's procedural forfeiture.

¶ 68                                III. CONCLUSION

¶ 69            For the reasons stated, we affirm the trial court's judgment in part and reverse in part. Specifically, we reverse defendant's conviction on count IV and vacate the associated sentence. We affirm defendant's conviction and sentences on counts I and II.

¶ 70            Affirmed in part, reversed in part, and vacated in part.